2006-NMSC-025

137 P.3d 577

**Diane G. DEFLON, Plaintiff–Petitioner,**

v.

**Dan SAWYERS, Steve Lasky, and Jon Vance Hartley, Defendants– Respondents.**

No. 28,898.

Supreme Court of New Mexico.

April 24, 2006.

As Corrected June 29, 2006.

Thomas L. Johnson Law Offices, L.C., Thomas L. Johnson, Foster, Johnson, McDonald, Lucero, Koinis, L.L.P., Kerri Lee Peck, Albuquerque, NM, for Petitioner.

Gilkey & Stephenson, P.A., George Christian Kraehe, Barbara G. Stephenson, The Jaffe Law Firm, Mark S. Jaffe, McCary, Wilson & Pryor, P.C., Alan R. Wilson, Kennedy, Moulton & Wells, P.C., Deborah D. Wells, Albuquerque, NM, for Respondents.

**OPINION**

CHÁVEZ, Justice.

{1} This case explores the res judicata and collateral estoppel effects of the dismissal of a federal lawsuit on subsequent state court proceedings. Plaintiff originally sued her former employer, Danka Corporation, Inc., in the United States District Court for the District of New Mexico for sex discrimination in violation of Title VII, 42 U.S.C. §§ 2000e–2, 2000e–3 (2000), and in violation of the Equal Pay Act, 29 U.S.C. § 206(d) (2000). Plaintiff also brought two state law claims for negligent retention and supervision and intentional infliction of emotional distress in her federal lawsuit. All claims in the federal lawsuit were based primarily on the actions of Danka employees. The federal district court granted Danka's motion for summary judgment, and the Tenth Circuit Court of Appeals affirmed. *Deflon v. Danka Corp.*, 1 Fed.Appx. 807 (10th Cir.2001). Plaintiff then filed suit against Defendants, who were all Danka employees, in state court for intentional infliction of emotional distress, intentional interference with a contract, defamation, prima facie tort, and civil conspiracy. Finding that the doctrines of res judicata and collateral estoppel barred Plaintiff's claims, the district court dismissed Plaintiff's complaint with prejudice. Plaintiff appealed the dismissal of two claims—intentional interference with a contract and civil conspiracy—and the Court of Appeals affirmed that dismissal. *DeFlon v. Sawyers*, No. 23,013, slip op. at 2 (Ct.App. July 28, 2004). Plaintiff now asks this Court to reverse the Court of Appeals and reinstate her claims for intentional interference with a contract and civil conspiracy. We hold that res judicata does not bar Plaintiff's claims because Defendants, who allegedly acted outside the scope of their authority, are not in privity with the defendant in the federal suit. Collateral estoppel does not bar Plaintiff's claims because the Tenth Circuit did not actually and necessarily decide issues which would bar the present claims.

**I. RES JUDICATA DOES NOT BAR PLAINTIFF'S CLAIMS BECAUSE DEFENDANTS ARE NOT IN PRIVITY WITH THE DEFENDANT IN THE FEDERAL SUIT**

{2} Res judicata prevents a party or its privies from repeatedly suing another for the same cause of action. *See Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 694, 652 P.2d 240, 244 (1982), *overruled on other grounds by Universal Life Church v. Coxon*, 105 N.M. 57, 58, 728 P.2d 467, 469 (1986). Or, as the Court of Appeals explained, "Res judicata bars relitigation of the same claim between the same parties or their privies when the first litigation resulted in a final judgment on the merits." *DeFlon*, No. 23,013, slip op. at 4 (citing *Ford v. N.M. Dep't of Pub. Safety*, 119 N.M. 405, 407, 891 P.2d 546, 548 (Ct.App.1994)). Because the first final judgment in this case came from

federal court, the Court of Appeals indicated that federal law governs the preclusive effect that the prior federal judgment should have on these state court proceedings. *Id.* at 4 (citing *Ford,* 119 N.M. at 409, 891 P.2d at 548 and *Edwards v. First Fed. Sav. & Loan Ass'n,* 102 N.M. 396, 402–04, 696 P.2d 484, 490–92 (Ct.App.1985)). We agree with the importance of recognizing and granting appropriate deference to federal court judgments but note that "[f]ederal law and New Mexico law are not divergent on claim preclusion doctrine." *Moffat v. Branch,* 2005–NMCA–103, ¶ 11, 138 N.M. 224, 118 P.3d 732. Therefore, we employ both federal and state precedent in analyzing this case.

■ {3} Because the parties do not dispute the facts in this case, we review the legal issue presented by the district court's application of res judicata de novo. *Anaya v. City of Albuquerque,* 1996–NMCA–092, ¶ 5, 122 N.M. 326, 924 P.2d 735. Res judicata bars a subsequent lawsuit if four elements are met: "1) the parties must be the same or in privity; 2) the subject matter must be identical; 3) the capacity or character of persons for or against whom the claim is made must be the same; and 4) the same cause of action must be involved in both suits." *Myers v. Olson,* 100 N.M. 745, 747, 676 P.2d 822, 824 (1984) (cited authority omitted). The only element at issue in this case is whether Defendants are in privity with Danka, the defendant in the federal litigation. *See DeFlon,* No. 23,013, slip op. at 4–5.

■ {4} Determining whether parties are in privity for purposes of res judicata requires a case-by-case analysis. In *St. Louis Baptist Temple, Inc. v. FDIC,* the Tenth Circuit provided insight into the flexible definition of privity:

> There is no definition of "privity" which can be automatically applied in all cases involving the doctrines of res judicata and collateral estoppel. Thus, each case must be carefully examined to determine whether the circumstances require its application. This is so, notwithstanding the general assumption that res judicata applies only if the parties in the instant action were the same and identical parties in the prior action resulting in a judgment. Privity requires, at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same.

605 F.2d 1169, 1174 (10th Cir.1979) (citing *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940) and *Green v. Bogue,* 158 U.S. 478, 15 S.Ct. 975, 39 L.Ed. 1061 (1895)). *St. Louis Baptist* further explained that parties have been found in privity where they represent the same legal right or where they have a "mutual or successive relationship to the same rights of property." *Id.* at 1175. *Lowell Staats Mining Co. v. Philadelphia Electric Co.,* 878 F.2d 1271 (10th Cir.1989), clarifies and expands the *St. Louis Baptist* discussion. "Privity has been held to exist in the following relationships: concurrent relationship to the same property right (i.e. trustee and beneficiary); successive relationship to the same property or right (i.e. seller or buyer); or representation of the interests of the same person." *Lowell Staats,* 878 F.2d at 1275. Because none of these relationships exist in the present case, we will next consider those cases where privity was found not to exist.

{5} The Tenth Circuit has indicated that privity does not exist where an initial lawsuit is brought against an employer and a second lawsuit is then brought against an employee acting in his or her individual capacity. *Morgan v. City of Rawlins,* 792 F.2d 975, 980 (10th Cir.1986) (stating, "We fail to see how Mr. DeHerrera's employee/employer relationship bars his presence in this suit when he is named for actions for which he allegedly was personally responsible.") (citing *Smith v. Updegraff,* 744 F.2d 1354 (8th Cir.1984)). The case of *Lowell Staats* echos this proposition, finding that the plaintiff's claims against two employee defendants would have survived res judicata if those claims had been brought against the employee defendants in their individual capacities, instead of in their official capacities as corporate officers or agents. 878 F.2d at 1276, 1278. *Lowell Staats* found the fact that the plaintiff had "failed to allege any other basis of common law liability" against one of those two em-

ployee defendants to be of particular importance. *Id.* at 1278.

{6} Plaintiff in the present case asserts the basis of common law liability that was lacking in *Lowell Staats:* intentional interference with a contract. "Parties to a contract cannot bring an action for tortious interference with an existing contract against each other." *Salazar v. Furr's,* 629 F.Supp. 1403, 1410 (D.N.M.1986) (citing *Wells v. Thomas,* 569 F.Supp. 426, 434 (E.D.Pa. 1983)). The appropriate cause of action between parties to the same contract would be breach of contract. Thus, in the present case Plaintiff could not have sued Danka for interfering with her employment contract.

{7} Plaintiff can only bring an intentional interference with a contract claim against the present Defendants *in their individual capacities.* In *Salazar,* the United States District Court for the District of New Mexico held that the president of a corporation was not liable for tortious interference with a contract for firing a pregnant employee before her pension benefits could vest. 629 F.Supp. at 1406, 1410. Although *Salazar* offered little discussion on this issue, its holding was presumably based on the implicit finding that the president was acting as an agent of the corporation, and therefore was not a third party to the contract. *Id.* at 1410. A corporate officer acting outside the scope of authority, however, may be liable for interfering with a corporate contract. *Ettenson v. Burke,* 2001–NMCA–003, ¶¶ 16–17, 130 N.M. 67, 17 P.3d 440.

{8} In *Ettenson,* a former employee sued the defendant, the president and CEO of a magazine company, for civil conspiracy and tortious interference with a contract. The defendant allegedly offered the plaintiff stock in the company and assurances of long-term employment in lieu of salary increases, but then suddenly fired the plaintiff and tried "to squeeze him financially and force him to waive whatever legal claims he had arising out of the termination." *Ettenson,* 2001–NMCA–003, ¶ 7, 130 N.M. 67, 17 P.3d 440. Discussing the tortious interference with a contract claim, the Court of Appeals acknowledged "the theory that a corporate officer is absolutely immune from suit for interfering with the contracts of his own corporation." *Id.* ¶ 16. Under that theory, the corporate agent breaks the contract on behalf of the corporation and does not merely interfere with the contract as a third party. *Id.* (quoting *Said v. Butt,* 3 L.R. 497, 505–06 (K.B. 1920)). Nevertheless, the Court of Appeals found the absolute immunity theory to be a minority view. *Id.* The majority view is "that a corporate officer is privileged to interfere with his corporation's contracts only when he acts in good faith and in the best interests of the corporation, as opposed to his own private interests." *Id.* ¶ 17.

{9} The idea behind the qualified immunity theory is that an officer acting on behalf of a corporation should have the authority to breach a corporation's contract, leaving the corporation to answer for the authorized breach in a breach of contract action. *See id.* ¶ 16. An officer acting outside the scope of his or her employment and in his or her own private interest has no authority to breach the corporation's contract, and that officer should not be able to hide behind a corporate shield for unauthorized conduct. *See id.* ¶ 17. We agree with the Court of Appeals that "[a] qualified privilege is more attune with our case law than a blanket privilege of absolute immunity would be," *id.* ¶ 20, and we adopt the Court of Appeals' analysis. In New Mexico, corporate officers may be liable for interfering with corporate contracts if such interference is in bad faith and against the best interests of the corporation. *Id.* ¶¶ 18, 19.

{10} Determining whether a corporate officer's actions fall outside the scope of authority "requires a court to delve into the motivating forces behind the officer inducing his corporation to breach its contractual obligations." *Id.* ¶ 18. In other words, our trial courts must examine whether the corporate officer "acted to satisfy personal feelings . . . or to serve his own private interest with no benefit to the corporation." *Id.* ¶ 18 (quoting *Ong Hing v. Ariz. Harness Raceway, Inc.,* 10 Ariz.App. 380, 459 P.2d 107, 115 (1969)). Because we interpret Plaintiff's complaint as alleging that Defendants acted outside the scope of their corporate authority, we do not

find Defendants and Danka in privity for purposes of the intentional interference with a contract claim.[1] The district court improperly applied res judicata to dismiss this claim. Because "civil conspiracy by itself is not actionable" and must instead attach to the independent, unlawful acts alleged in Plaintiff's claim for intentional interference with a contract, *Ettenson*, 2001-NMCA-003, ¶ 12, 130 N.M. 67, 17 P.3d 440, Plaintiff's civil conspiracy claim survives, as well.

 {11} Defendants argue that, even if Plaintiff could not have sued Danka for tortious interference with a contract in federal court, Plaintiff should have brought the claim against Defendants under the federal court's supplemental jurisdiction, referring to the supplemental jurisdiction statute, codified as 28 U.S.C. § 1367 (1990). The Court of Appeals found Defendants' argument persuasive, noting that because the federal court exercised pendent jurisdiction over Plaintiff's state tort claims, there was no reason to believe that the federal court would have denied supplemental jurisdiction on the intentional interference claim. *DeFlon v. Sawyers*, No. 23,013, slip op. at 9. Instructive on this issue is the case of *Salazar v. Murphy*, 66 N.M. 25, 340 P.2d 1075 (1959). There, Plaintiff sued a trucking company in federal court, and the trucking company filed a third-party complaint against the local owner of the truck. *Id.* at 26–27, 340 P.2d at 1076–77. Plaintiff failed to appear at trial, and the federal court dismissed both the complaint and the third-party complaint with prejudice. *Id.* at 27, 340 P.2d at 1077. Plaintiff then sued the local owner of the truck, as well as the driver, in state court, and the state district court granted the defendants' motion for summary judgment on the grounds of res judicata. *Id.* at 26–27, 340 P.2d at 1076. In reversing the district court and reinstating the plaintiff's state suit, we noted that the plaintiff had not actually sued the defendants in federal court, "and although he could have, he was not required to do so." *Id.* at 30, 340 P.2d at 1079.

{12} In *Salazar*, we declined to make the permissive rules involving third party practice mandatory when they are, by their plain language, permissive. *Id.* at 31, 340 P.2d 1075, 340 P.2d at 1079; *see* Fed.R.Civ.P. 14 and Rule 1-014 NMRA 2006. In this case, Plaintiff could have requested supplemental jurisdiction from the federal court. However, Plaintiff was not required to do so. *See* Fed.R.Civ.P. 19, 20. This remains a case, like *Salazar*, where the current issues between Plaintiff and Defendants have not been litigated. *See Salazar*, 66 N.M. at 30, 340 P.2d at 1079. Therefore, "[t]he rule that a judgment between the same parties or their privies bars a second action as to what was litigated and also as to all matters that might have been litigated clearly has no application in a situation such as the one here present." *Id.* at 30, 340 P.2d at 1079. We hold that res judicata does not bar Plaintiff's claims for intentional interference with a contract and the attendant civil conspiracy.

## II. COLLATERAL ESTOPPEL DOES NOT APPLY BECAUSE PLAINTIFF'S INTENTIONAL INTERFERENCE WITH A CONTRACT AND CIVIL CONSPIRACY CLAIMS WERE NOT ACTUALLY AND NECESSARILY DECIDED IN FEDERAL COURT

 {13} Like res judicata, collateral estoppel promotes judicial economy and protects parties from endless relitigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Unlike res judicata, collateral estoppel "does not require that both suits be based on the same cause of action." *Adams v. United Steelworkers of Am.*, 97 N.M. 369, 373, 640 P.2d 475, 479 (1982). Instead, collateral estoppel, also called issue preclusion, prevents a party from re-litigating "ultimate facts or *issues* actually and necessarily decided in a prior suit." *Id.* (emphasis added). Because the initial judgment in the present case comes from federal court, we will apply the federal law of collateral estoppel unless doing so conflicts with precedent from this Court.

1. We do not decide whether Plaintiff has met her burden to show that Defendants were acting outside the scope of their authority. This is in part a question of fact which we leave for the district court to determine.

*See Edwards,* 102 N.M. at 404, 696 P.2d at 492. However, because we find little difference between federal and state law on the collateral estoppel elements important to this case, we rely on both federal and state precedent.

{14} Collateral estoppel traditionally has four elements. The wording of these four elements differs somewhat between New Mexico and the Tenth Circuit. *Compare Shovelin v. Central N.M. Elec. Coop., Inc.,* 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993), *with Lombard v. Axtens,* 739 F.2d 499, 502 (10th Cir.1984). Nevertheless, it is clear that a party attempting to use nonmutual defensive collateral estoppel in either court system must establish that the issue to be estopped has been actually litigated and necessarily determined, or actually and necessarily decided. *Shovelin,* 115 N.M. at 297, 850 P.2d at 1000; *see also Lombard,* 739 F.2d at 502 (stating, "The doctrine of collateral estoppel precludes relitigation of issues actually and necessarily decided in a prior action.") (citing *Parklane,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552). The main concern is that a party against whom collateral estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior action. *See Shovelin,* 115 N.M. at 297, 850 P.2d at 1000; *Lombard,* 739 F.2d at 502.

{15} The Court of Appeals concluded that Plaintiff's claims for intentional interference with a contract and civil conspiracy were "actually and necessarily decided" by the federal court and that Plaintiff had a full and fair opportunity to litigate those issues. *DeFlon,* No. 23,013, slip op. at 11. According to the Court of Appeals, because the state suit is grounded on the same set of facts as the federal suit, and because the federal court did not think those facts were sufficient to establish the causes of action that Plaintiff brought in federal court, collateral estoppel bars Plaintiff's state court claims for intentional interference with a contract and civil conspiracy. *Id.* Reviewing this legal issue de novo, *see Anaya,* 1996–NMCA–092, ¶ 5, 122 N.M. 326, 924 P.2d 735, we disagree and reverse the Court of Appeals.

## A. CURRENT STATE CLAIMS

{16} In her state complaint, Plaintiff alleged that Defendants "deliberately and intentionally drove Plaintiff away from her employment at Danka by using improper means." In order to prove intentional interference with a contract, a plaintiff must establish that the defendant, "without justification or privilege to do so, induces a third person not to perform a contract with another." *Wolf v. Perry,* 65 N.M. 457, 461, 339 P.2d 679, 681 (1959). In *Ettenson,* the Court of Appeals clarified the elements of intentional interference with a contract. 2001–NMCA–003, ¶ 14, 130 N.M. 67, 17 P.3d 440. To succeed, Plaintiff must prove: (1) Defendants had knowledge of the contract; (2) Plaintiff was unable to fulfill her contract obligations; (3) Defendants played an active and substantial part in causing Plaintiff to lose the benefits of the contract; (4) Plaintiff suffered damages resulting from the breach; and (5) Defendants induced the breach without justification or privilege to do so. *See id.* As will be discussed below, these elements differ considerably from each of the claims Plaintiff raised in federal court and do not require the same findings in order to succeed. Because Plaintiff's claim for civil conspiracy is not actionable by itself and survives only if the underlying claim for intentional interference with a contract survives, *Ettenson,* 2001–NMCA–003, ¶ 12, 130 N.M. 67, 17 P.3d 440, we will only discuss the intentional interference with a contract claim in this collateral estoppel portion of the opinion.

## B. FEDERAL TITLE VII CLAIMS

{17} Examination of the sexual discrimination standards applicable to Plaintiff's Title VII claims reveals that her present claim for intentional interference with a contract could not have been actually and necessarily decided in federal court for two reasons: (1) a substantial portion of Plaintiff's evidence was excluded in federal court but would not be excluded in state court, and (2) the threshold showing for Title VII claims is different from what is needed to establish intentional interference with a contract. As to the first reason, the Tenth Circuit found that

the federal district court had properly excluded much of Plaintiff's evidence as falling outside of the Title VII period of limitations. *Deflon*, 1 Fed.Appx. at 812–15.[2] There are exceptions to this limitations period, but the Tenth Circuit found that Plaintiff had not satisfied them here. *Id.* at 813–15. Therefore, the Tenth Circuit did not consider any evidence outside of the 300–day range, including Plaintiff's allegations that Defendant Sawyers called Plaintiff into his office almost every morning for roughly one year "belittling her work performance and threatening to fire her, while pacing in front of Plaintiff and waiving his finger in her face"; that Defendant Lasky demeaned Plaintiff; and that Defendant Hartley made inappropriate comments directed at Plaintiff, shunned Plaintiff by refusing to speak to her or acknowledge her for a period of time, and ignored company policy by denying Plaintiff compensation for commissions that coworkers stole from her. This evidence would not be excluded in Plaintiff's state court action because no similar limitations period applies in intentional interference with contract cases.

{18} The second reason supporting our conclusion that Plaintiff's claim for intentional interference with a contract was not actually and necessarily decided in federal court is the fact that the threshold showing for Title VII claims is different from what is needed to establish intentional interference with an employment contract. The Tenth Circuit approached Plaintiff's allegations of sexual discrimination under Title VII as four separate causes of action: (1) sexual discrimination based on a hostile work environment; (2) sexual discrimination resulting in constructive discharge; (3) sexual discrimination based on disparate compensation; and (4) sexual discrimination based on a failure to promote. *Deflon*, 1 Fed.Appx. at 810. These sexual discrimination claims required Plaintiff to demonstrate either sexually dis-

criminatory conduct or retaliation following a complaint of sexual discrimination, not that Defendants unjustifiably played an active and substantial part in causing Plaintiff to lose the benefits of her employment. *Ettenson*, 2001–NMCA–003, ¶ 14, 130 N.M. 67, 17 P.3d 440. We examine each of Plaintiff's federal sexual discrimination claims in greater detail below.

### 1. HOSTILE WORK ENVIRONMENT

■ {19} In order to prove sexual discrimination based on a hostile work environment theory, Plaintiff needed to establish that the alleged conduct "stemmed from a sexual animus" and "was severe or pervasive enough to create a work environment that was objectively and subjectively abusive and hostile." *Deflon*, 1 Fed.Appx. at 816. Considering only conduct tied to gender, the Tenth Circuit concluded that the district court had properly dismissed this claim; Plaintiff failed to " 'show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Id.* (quoting *Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir.1998)). While proving sexual discrimination under this standard might suffice to prove interference with an employment contract, we decline to hold that a plaintiff must show sexual discrimination in order to establish intentional interference with a contract. Therefore, the Tenth Circuit did not actually and necessarily decide Plaintiff's current claims by dismissing her federal hostile work environment claim.

### 2. CONSTRUCTIVE DISCHARGE

■ {20} To succeed on her constructive discharge claim, Plaintiff needed to show that "the employer by its discriminatory acts has

---

2. Generally a plaintiff must file a complaint with the Equal Employment Opportunity Commission within 180 days of the unlawful conduct. *Deflon*, 1 Fed.Appx. at 812 (citing 42 U.S.C. § 2000e–5(e)(1)). In a state like New Mexico where a plaintiff first files a complaint with a state or local agency, the limitations period extends to 300 days. *Id.* (citing *Mascheroni v. Bd.*

*of Regents of the Univ. of Cal.*, 28 F.3d 1554, 1557 (10th Cir.1994)). Plaintiff filed an EEOC complaint on May 22, 1997, and resigned from Danka on May 27, 1997. *Id.* at 810. Plaintiff "concede[d] that much of the discriminatory conduct occurred prior to July 26, 1996 (the cutoff date for the limitations period)." *Id.* at 813.

made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Deflon*, 1 Fed.Appx. at 819 (quoting *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir.1986)). The Tenth Circuit explained that Plaintiff could establish a prima facie case of constructive discharge in two ways: (1) Plaintiff "was forced to resign from her job due to sex discrimination" or (2) Plaintiff was the object of retaliatory discrimination following a complaint of sexual discrimination. *Id.* at 819.

{21} The Tenth Circuit found that the first of these constructive discharge theories failed because Plaintiff had not demonstrated a sexually hostile work environment, *id.*, which it had previously defined as sexual harassment "severe or pervasive enough to create a work environment that was objectively and subjectively abusive and hostile." *Id.* at 816. We have already indicated that Plaintiff did not have to prove sexual harassment creating an abusive and hostile work environment in order to succeed on her intentional interference with a contract claim. Therefore, the Tenth Circuit's holding on this issue does not preclude Plaintiff's present claims.

■ {22} Regarding Plaintiff's second theory for constructive discharge, based on retaliatory discrimination, to establish a prima facie case of retaliatory discrimination in federal court, Plaintiff needed to show: "(1) protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer; and (3) a causal connection between the protected activity and the adverse action." *Id.* at 819 (citing *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993)). Plaintiff was unable to establish the requisite causal connection because the retaliatory conduct she alleged occurred *before* she filed an Equal Employment Opportunity Commission complaint, not after. *Id.* There would be no similar time limitation in the state case, and Plaintiff would not have to show any retaliation. Plaintiff simply needs to show that Defendants unjustifiably interfered with her employment obligations and played an active and substantial part in causing Plaintiff to lose the benefits of her employment.

*Ettenson*, 2001–NMCA–003, ¶ 14, 130 N.M. 67, 17 P.3d 440. We conclude that the Tenth Circuit's analysis on constructive discharge did not actually and necessarily decide Plaintiff's intentional interference with a contract claim.

### 3. DISPARATE PAY AND FAILURE TO PROMOTE

■ {23} To prove her claims for disparate pay and failure to promote, Plaintiff needed to demonstrate that Danka paid her less than similarly situated male employees and passed her over for promotions in favor of male employees. *Deflon*, 1 Fed.Appx. at 817–18. The Tenth Circuit concluded that Plaintiff failed to show that Danka actually paid her less than similarly situated male co-workers, *id.* at 817, or that Danka denied Plaintiff a promotion. *Id.* at 818. Both of these causes of action focus on the conduct of Plaintiff's corporate employer, not on the issue of whether Defendants unjustifiably caused Plaintiff to lose the benefits of her employment at Danka. *See Ettenson*, 2001–NMCA–003, ¶ 14, 130 N.M. 67, 17 P.3d 440. Thus, the Tenth Circuit's rulings on the disparate pay and failure to promote claims did not actually and necessarily decide Plaintiff's present claims.

### C. FEDERAL EQUAL PAY ACT CLAIM

■ {24} As was the case with the disparate pay claim above, the elements of intentional interference with a contract differ from what is needed to establish an Equal Pay Act violation. To succeed on her Equal Pay Act claim, Plaintiff needed to show that she performed work "substantially equal to that of the male employees" under similar working conditions for less pay. *Deflon*, 1 Fed.Appx. at 820. The Tenth Circuit held that Plaintiff failed to establish that the jobs of the higher paid men with whom she sought to compare herself were "substantially equal" to her job. *Id.* We fail to see how a holding that Plaintiff did not perform the same job as higher paid male co-workers actually and necessarily decided the issue of whether Defendants interfered with her employment.

646

## D. NEGLIGENT SUPERVISION AND RETENTION CLAIM

{25} Analyzing New Mexico law, the Tenth Circuit stated that in order to survive summary judgment on her negligent supervision and retention claim Plaintiff had to show: (1) that a wrongful act committed by a Danka employee injured Plaintiff, and (2) that Danka's supervision and retention of that employee was negligent. *Deflon,* 1 Fed.Appx. at 820. After concluding that Plaintiff's Title VII allegations failed to prove that a wrongful act committed by a Danka employee injured Plaintiff, the Tenth Circuit examined whether Plaintiff's allegations of common law sexual harassment would satisfy this "wrongful act" requirement. *Id.* at 821. Relying on New Mexico case law, the Tenth Circuit held that Plaintiff could not succeed because in New Mexico evidence of "sexual groping, sexual assault and battery or other substantial overt sexual conduct toward a female employee" is required to prove sexual harassment. *Id.* (citing *Coates v. Wal–Mart Stores,* 127 N.M. 47, 51, 976 P.2d 999, 1003 (1999)). We need not examine whether the Tenth Circuit correctly interpreted New Mexico law on sexual harassment. However, we find it important that the Tenth Circuit focused on *sexually* inappropriate conduct. While Plaintiff alleges facts of sexual discrimination in her state claim, Plaintiff need not establish sexual harassment in order to prove that Defendants, without justification or privilege, played an active and substantial part in causing her to lose the benefits of her employment. *Ettenson,* 2001–NMCA–003, ¶ 14, 130 N.M. 67, 17 P.3d 440. Therefore, we conclude that the Tenth Circuit did not actually and necessarily decide the intentional interference with a contract issue in reaching its decision on negligent supervision and retention.

## E. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

{26} The Tenth Circuit stated that "the conduct about which [Plaintiff] complains was not sufficiently severe to give rise to a claim of intentional infliction of emotional distress." *Deflon,* 1 Fed.Appx. at 822. In analyzing the issue, the Tenth Circuit stated that Plaintiff needed to show that Danka's "conduct was 'extreme and outrageous under the circumstances, that the tortfeasor acted intentionally or recklessly, and that as a result of the conduct the claimant experienced severe emotional distress.'" *Id.* (quoting *Coates,* 127 N.M. at 57, 976 P.2d at 1009). After examining all of Plaintiff's evidence, the Tenth Circuit concluded that the alleged misconduct was not "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Stieber v. Journal Pub. Co.,* 120 N.M. 270, 274, 901 P.2d 201, 205 (1995)). Therefore, Plaintiff's intentional infliction of emotional distress claim failed. *Id.* Conduct sufficient to establish intentional infliction of emotional distress might also be sufficient to establish intentional interference with a contract. However, while proving intentional interference with a contract is not easy, we decline to hold that Plaintiff must establish "extreme and outrageous" conduct in order to prove that Defendants, without justification or privilege, played an active and substantial part in causing her to lose the benefits of her employment. *Ettenson,* 2001–NMCA–003, ¶ 14, 130 N.M. 67, 17 P.3d 440. Therefore, we conclude that the Tenth Circuit did not actually and necessarily decide Plaintiff's intentional interference with a contract claim.

## CONCLUSION

{27} Because privity does not exist between the present Defendants and the defendant in the federal lawsuit, res judicata does not bar Plaintiff's state court lawsuit. We similarly find that collateral estoppel does not apply because Plaintiff's claims for intentional interference with a contract and civil conspiracy were not actually and necessarily decided in federal court. We remand to state district court for proceedings consistent with this opinion.

{28} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and PETRA JIMENEZ MAES, Justices.