IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2015-NMSC-002

Filing Date: January 8, 2015

Docket No. 34,365

JEFFREY POTTER,

       Plaintiff-Petitioner,

v.

CHRIS PIERCE, WILLIAM DAVIS,
DAVIS & PIERCE, P.C., and
JOHN DOE LAW FIRM,

       Defendants-Respondents.

ORIGINAL PROCEEDING ON CERTIORARI
Carl J. Butkus, District Judge

Law Office of Daymon Ely
Daymon B. Ely
Albuquerque, NM

Law Office of William G. Gilstrap
William Grant Gilstrap, II
Albuquerque, NM

for Petitioner

Domenici Law Firm, P.C.
Pete V. Domenici, Jr.
Lorraine Hollingsworth
Albuquerque, NM

for Respondents

OPINION

DANIELS, Justice.

1

**{1}**     Res judicata is a judicially created doctrine designed to promote efficiency and finality by giving a litigant only one full and fair opportunity to litigate a claim and by precluding any later claim that could have, and should have, been brought as part of the earlier proceeding. In this case, we examine the preclusive effect of a fee proceeding in bankruptcy court on a later lawsuit for legal malpractice allegedly committed in the course of the bankruptcy. We hold that the elements of res judicata are met and that Petitioner was sufficiently aware of his malpractice claim, which he could and should have brought in the bankruptcy proceeding. We affirm the dismissal of Petitioner's subsequent malpractice suit but emphasize that barring a claim on res judicata grounds requires a determination that the claimant had a full and fair opportunity to litigate the claim in the earlier proceeding.

## I.     BACKGROUND

**{2}**     One month prior to filing for voluntary Chapter 11 bankruptcy on May 19, 2005, Petitioner Jeffery Potter sold his interest in a limited partnership known as Monte Mac. Petitioner was represented in the bankruptcy proceedings by Respondents. During these proceedings, Petitioner, through Respondents as counsel, filed his schedules and his statement of financial affairs (SOFA). The SOFA requires that the debtor list all property transferred within the year immediately preceding the bankruptcy petition, other than property transferred in the ordinary course of business or financial affairs. *See* Official and Procedural Bankruptcy Forms, Form 7, 11 U.S.C. (2003). Petitioner testified under oath that he had reviewed the schedules and the SOFA and that they were true and correct. Neither the schedules nor the SOFA listed Petitioner's sale of the Monte Mac interest.

**{3}**     Referring to "a fundamental disagreement," Respondents filed a motion to withdraw as counsel for Petitioner, which the bankruptcy court granted one year after Petitioner's Chapter 11 filing. After moving for withdrawal, Respondents also filed an application for fees, to which Petitioner filed an objection on May 22, 2006. The objection from Petitioner did not specifically mention the undisclosed Monte Mac transfer but alleged, among other things, that Respondents had threatened Petitioner with their withdrawal, had caused Petitioner to file inaccurate financial disclosures, and had obtained his signature on these disclosures by fraud. The bankruptcy court held a fee hearing on April 10, 2007. After hearing objections, the bankruptcy court analyzed billing records and disallowed some fees as excessive, duplicative, clerical, or administrative in nature. The bankruptcy court approved the rest in a final fee award entered on June 4, 2007, addressing the services performed, rates charged, and time billed but not specifically mentioning the allegations made in the objections. Petitioner did not appeal or move the bankruptcy court to reconsider its judgment.

**{4}**     Following Respondents' withdrawal, the bankruptcy court converted Petitioner's bankruptcy from Chapter 11 to Chapter 7. When questioned about the Monte Mac sale on the day after the fee hearing and prior to the entry of the final fee judgment, Petitioner testified to his creditors that he had owned an interest in Monte Mac but had sold it for $72,000 and could not recall when he sold it.

**{5}** On March 21, 2008, Petitioner filed a motion in bankruptcy court alleging damages from malpractice that included over one million dollars for his exposure to a denial of his discharge.

**{6}** Petitioner never filed an amended schedule or SOFA to include the sale of his interest in the Monte Mac partnership. Finding this to be a knowing and fraudulent omission, the bankruptcy court denied the discharge of Petitioner's debts on June 23, 2009.

**{7}** Petitioner then brought a separate action for legal malpractice, breach of fiduciary duty, and misrepresentation in the Second Judicial District Court. In his complaint, Petitioner made broad allegations of malpractice against Respondents. Respondents moved to dismiss Petitioner's complaint as barred by the res judicata effect of the bankruptcy court fee award. Petitioner responded that his malpractice claim had not accrued until he had been denied a discharge, because until then he had not suffered injury, and so approval of the fee award did not bar his claim. The district court found that this argument "fails on the facts" because Petitioner alleged both malpractice and damages sustained from that malpractice in the bankruptcy fee proceedings and in subsequent pleadings prior to the denial of his discharge. The district court granted summary judgment for Respondents on grounds of res judicata. Petitioner appealed, the Court of Appeals affirmed, and we granted certiorari. *Potter v. Pierce*, 2014-NMCA-002, ¶ 1, 315 P.3d 303, *cert. granted*, 2013-NMCERT-011.

## II.    STANDARD OF REVIEW

**{8}** Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 9, 335 P.3d 1243; Rule 1-056(C) NMRA. We review a grant of summary judgment de novo. *Zamora*, 2014-NMSC-035, ¶ 9. In reviewing an order on summary judgment, we examine the whole record, considering the facts and drawing all reasonable inferences in a light most favorable to the nonmoving party. *Id.* "Whether the elements of claim preclusion are satisfied is a legal question, which we [also] review de novo." *Kirby v. Guardian Life Ins. Co. of Am.*, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 231 P.3d 87.

## III.    DISCUSSION

**{9}** Petitioner argues that New Mexico precedent does not allow a nonadversarial fee proceeding to preclude a later claim for legal malpractice; and he reasons that because he did not suffer any injury until the denial of his discharge, his malpractice claim could not have been brought earlier.

**{10}** "[R]es judicata is designed to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, . . . prevent [] inconsistent decisions, [and] encourage reliance on adjudication." *Computer One, Inc. v. Grisham & Lawless, P.A.*, 2008-NMSC-038, ¶ 31, 144 N.M. 424, 188 P.3d 1175 (alterations in original) (internal quotation marks and citation omitted). Federal law and New Mexico law are consistent on the general

standards governing claim preclusion. *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 2, 139 N.M. 637, 137 P.3d 577. A party asserting res judicata or claim preclusion must establish that (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits. *Kirby*, 2010-NMSC-014, ¶ 61. In addition to those elements, as we discuss in this opinion, res judicata will preclude a malpractice claim only if the claim reasonably could and should have been brought during the earlier proceeding. The decision rests on the prior opportunity to litigate, and neither the type of proceeding nor the damages sought are determinative. We address the two elements contested by Petitioner, whether the cause of action was the same in both proceedings and whether Petitioner's malpractice claim could and should have been brought in the bankruptcy proceedings.

**A.    The Legal Malpractice Claim Involves the Same Cause of Action for Res Judicata Purposes as the Fee Claim Because Both Were Based on the Nature and Quality of Respondents' Legal Services During the Bankruptcy Representation**

**{11}**    Both the Tenth Circuit and New Mexico have adopted the transactional approach in analyzing the single-cause-of-action element of res judicata. *See Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335-36 (10th Cir. 1988) (adopting the Restatement (Second) of Judgments §§ 24-25 (1982) in determining what constitutes a single cause of action for res judicata purposes in the Tenth Circuit); *Three Rivers Land Co. v. Maddoux*, 1982-NMSC-111, ¶ 27, 98 N.M. 690, 652 P.2d 240 (same in New Mexico), *overruled on other grounds by Universal Life Church v. Coxon*, 1986-NMSC-086, ¶ 9, 105 N.M. 57, 728 P.2d 467. The transactional approach considers all issues arising out of a "common nucleus of operative facts" as a single cause of action. *Anaya v. City of Albuquerque*, 1996-NMCA-092, ¶ 8, 122 N.M. 326, 924 P.2d 735 (internal quotation marks and citation omitted). The facts comprising the common nucleus should be identified pragmatically, considering (1) how they are related in time, space, or origin, (2) whether, taken together, they form a convenient trial unit, and (3) whether their "treatment as a single unit conforms to the parties' expectations or business understanding or usage." *Id.* ¶ 12.

**{12}**    Neither New Mexico nor the Tenth Circuit has specifically considered the preclusive effect of a final fee award in bankruptcy court on a later action for legal malpractice, but other jurisdictions that have addressed this issue have uniformly concluded that they are the same cause of action for the purposes of res judicata. *See, e.g.*, *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 491 (D.C. Cir. 2009) (holding that a fee application in bankruptcy court and a malpractice claim based on the same legal services arise out of the same nucleus of facts and satisfy the cause-of-action identity requirement of res judicata); *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003) (holding that fee applications and a legal malpractice claim based on the same representations arose from the same core of operative facts); *Iannochino v. Rodolakis (In re Iannochino)*, 242 F.3d 36, 46-49 (1st Cir. 2001) (holding that a fee application and a malpractice claim based on the same representation met the cause-of-action identity

4

requirement of res judicata); *Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.)*, 200 F.3d 382, 388-89 (5th Cir. 2000) (holding that a fee application and a trustee's malpractice claims concerned the same nucleus of operative facts and met the transactional test); *Breslin Realty Dev. Corp. v. Shaw*, 893 N.Y.S.2d 95, 100 (N.Y. App. Div. 2010) (holding that res judicata barred a malpractice claim based on legal services considered in a prior claim for fees, litigated and awarded, for the alleged-negligent services); *Stangel v. Perkins*, 87 S.W.3d 706, 710-11 (Tex. App. 2002) (holding that fee-application and malpractice claims based on the same representations concerned the same nucleus of operative facts and met the transactional test). Under the United States Bankruptcy Code, the bankruptcy court must consider "the nature, the extent, and the value" of services to determine reasonable compensation before awarding fees. *See* 11 U.S.C. § 330(a)(3) (2012). In these cases, courts have reasoned that because an action for legal malpractice concerns the same issues of quality necessarily considered by the bankruptcy court, the claims are based on the same cause of action.

**{13}**     Although not in the bankruptcy context, New Mexico cases have also concluded that a claim for attorney fees can have a res judicata effect on a later claim for malpractice. In *Brunacini v. Kavanagh*, the Court of Appeals determined that a suit for legal fees and a later suit for malpractice had a common origin and subject matter. *See* 1993-NMCA-157, ¶ 21, 117 N.M. 122, 869 P.2d 821. In *Moffat v. Branch*, the Court of Appeals affirmed a res judicata bar applied to a contract-related claim for attorney fees in the state district court after a federal court denied the attorney a charging lien, concluding that the two claims arose from the common nucleus of the attorney's representation in the underlying case. *See* 2005-NMCA-103, ¶¶ 17-21, 138 N.M. 224, 118 P.3d 732. In *Bennett v. Kisluk*, addressing res judicata under the compulsory counterclaim provisions of Rule 1-013 NMRA, the three-justice majority acknowledged that a claim for attorney fees was "related substantially enough" to bar a later action for malpractice. *See* 1991-NMSC-060, ¶ 10, 112 N.M. 221, 814 P.2d 89.

**{14}**     We hold here that this reasoning extends to claims of malpractice after a bankruptcy fee proceeding concerning the same legal services. Petitioner's two claims are rooted in a common nucleus of operative facts. The claim for legal malpractice concerns the same service period and alleged deficiencies in the same legal services that were the subject of the bankruptcy fee proceeding. Petitioner's claims would have formed a convenient trial unit because the bankruptcy court is already required to consider the quality of these services in determining the appropriate fees and has procedures available to hear objections and institute an adversarial proceeding if necessary. *See* 11 U.S.C. § 330(a)(1), (3)-(4) (requiring the bankruptcy court to determine that legal services were necessary and reasonable before approving fees); Fed. R. Bankr. P. 9014(a), (c) (2004) (requiring notice and the opportunity for a hearing in a contested matter and outlining the procedural rules that will apply). Treatment as a single unit would also conform to the parties' expectations because objections to services rendered must be raised in response to fee applications, *see* Fed. R. Bankr. P. 9014(a), advisory committee's note (2004), and because Petitioner did raise malpractice allegations in his objections to Respondents' fees. For claim preclusion purposes,

Petitioner's malpractice claim constitutes the same cause of action as the earlier fee proceeding in bankruptcy court.

**B.      Res Judicata Precludes Petitioner's Malpractice Claim Because He Had a Full and Fair Opportunity to Litigate It in the Bankruptcy Fee Proceeding**

**{15}**    Even if two actions are the same under the transactional test and all other elements are met, res judicata does not bar a subsequent action unless the plaintiff could and should have brought the claim in the former proceeding. *In re Intelogic Trace, Inc.*, 200 F.3d at 388; *see also Bank of Santa Fe v. Marcy Plaza Assocs.*, 2002-NMCA-014, ¶¶ 24-27, 131 N.M. 537, 40 P.3d 442 (discussing in consideration of res judicata whether a party was aware at a prior proceeding of its claim of overpayments). "Res judicata is a judicial creation ultimately intended to serve the interests of justice." *Kirby*, 2010-NMSC-014, ¶ 65 (italics omitted). "[A] party's full and fair opportunity to litigate is the essence of res judicata." *Brooks Trucking Co. v. Bull Rogers, Inc.*, 2006-NMCA-025, ¶ 11, 139 N.M. 99, 128 P.3d 1076. The adjudication of fees does not provide a safe haven to lawyers or other professionals later charged with malpractice. To the contrary, res judicata will only preclude a malpractice claim if the facts demonstrate that it could and should have been brought during the earlier proceeding.

**{16}**    After a bankruptcy fee hearing and after determining cause-of-action identity under the transactional test, federal courts have considered additional factors in determining whether res judicata bars a subsequent malpractice claim. These factors "include whether the fee hearing was an adversary proceeding or contested matter, the nexus between the order awarding [professional] fees and the claims now being asserted, and 'the amount of time that has elapsed since the case commenced.'" *In re Intelogic Trace, Inc.*, 200 F.3d at 388 (quoting *In re Howe*, 913 F.2d 1138, 1146 n.28 (5th Cir. 1990) (discussing the res judicata effect of bankruptcy court confirmation of a reorganization plan on a later claim in a state court for lender liability)). The fundamental determination is the fairness of preclusion under the totality of the circumstances in each case. This determination rests on the prior opportunity to litigate, and neither the type of proceeding nor the damages sought are determinative. *See, e.g.*, *In re Howe*, 913 F.2d at 1146 & n.28 ("We do not intimate that whether an adversary proceeding preceded a confirmation hearing is a litmus test for determining whether the action is barred by res judicata . . . . The critical question for res judicata purposes is whether the party could or should have asserted the claim in the earlier proceeding. Whether the proceeding was an adversary proceeding or contested matter, however, may be an important factor in determining if the claim could or should have been effectively litigated in the earlier proceeding.").

**{17}**    Petitioner asserts, relying on this Court's opinion in *Computer One*, that litigation on the issue of attorney fees based on a motion or lien can have no preclusive effect on a later claim for malpractice. *Computer One* reversed a grant of summary judgment that had precluded a legal malpractice claim because of the earlier approval of an attorney's charging lien in a suit between the client and a tortfeasor to which the attorney was not a party. 2008-

6

NMSC-038, ¶¶ 1-3. *Computer One* followed *Bennett* to prohibit using Rule 1-013(A) to preclude claims of legal malpractice after nonadversarial fee proceedings because that Rule, applicable only to "'opposing parties'" to an action, requires a formal adversarial relationship in order to give such parties fair notice of the obligation to assert all defenses or compulsory counterclaims. *Computer One*, 2008-NMSC-038, ¶¶ 23-25. Although the *Computer One* Court reserved judgment as to whether broader concepts of res judicata would apply, it did not expressly decide that issue because the defendant law firm had conceded in the earlier fee proceeding that the plaintiff client would be able to bring a later malpractice suit. *Id.* ¶ 36 & n.3. Accordingly, *Computer One* did not determine the issue now before us, whether res judicata will bar a later claim that could have been litigated in an earlier proceeding initiated by a motion for attorney fees. *See Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 (stating the general rule that "cases are not authority for propositions not considered" (internal quotation marks and citation omitted)).

**{18}** In the Rule 1-013 analysis in *Bennett* that *Computer One* relied on, the *Bennett* majority did suggest a possible distinction between the res judicata effect of a motion for fees and that of a separate fee lawsuit, but *Bennett* cited no authority for this distinction beyond the "opposing party" wording of our compulsory counterclaim rule and did not address long-established principles of res judicata beyond the requirements of Rule 1-013. *Bennett*, 1991-NMSC-060, ¶ 10. To the extent that *Bennett* could suggest such a rigid distinction, we clarify here that the application of res judicata does not depend on whether an earlier claim for fees is initiated procedurally through a motion or as a separate lawsuit, although the type of proceeding may be a factor in determining if the subsequent claim could or should have been litigated earlier. The reasoning of *Bennett* and *Computer One* concerning Rule 1-013 does not apply equally to the general principles of res judicata at issue here because the notion of fairness is built into the doctrine of res judicata and must be independently considered in its application. Allowing the type of proceeding to be determinative would defeat the broad case-by-case analysis required to determine whether there has already been a full and fair opportunity to litigate a claim.

**{19}** Petitioner does not argue that his earlier bankruptcy fee proceeding did not allow him to bring a malpractice claim, and it is clear that under federal law bankruptcy court procedures would have allowed such a claim. *See, e.g.*, *Capitol Hill Group*, 569 F.3d at 489-90 (holding that malpractice claims stemming from services provided in bankruptcy proceedings fall within the jurisdiction of the bankruptcy court); *Grausz*, 321 F.3d at 474 (holding that a claim for affirmative relief from malpractice could have been filed in bankruptcy court with an objection to a fee application); *In re Intelogic Trace, Inc.*, 200 F.3d at 389-91 (recognizing that a fee application in bankruptcy court is a contested matter to which an objection may be filed and that an affirmative malpractice claim may be filed with such an objection to initiate an adversary proceeding, and holding that bankruptcy court procedures would allow a malpractice claim to be effectively asserted).

**{20}** Petitioner contends that because his bankruptcy discharge was not denied until more

than two years after the proceeding to determine Respondents' fees, he was unable during the fee hearing to bring the particular malpractice claim he alleges here, the failure to list the transfer of the Monte Mac asset in his bankruptcy schedules, because he had not yet suffered injury from that omission. In New Mexico, a malpractice claim accrues when the plaintiff suffers actual injury and discovers, or through the exercise of reasonable diligence should discover, the facts essential to the claim. *Sharts v. Natelson*, 1994-NMSC-114, ¶ 11, 118 N.M. 721, 885 P.2d 642. Although Petitioner clearly alleged malpractice in his objection to Respondents' fees, the factual nature of those allegations is distinct from the failure to list the Monte Mac asset, the claim at issue here. And to bar this malpractice claim, Petitioner must have been specifically aware of the failure to list Monte Mac in his bankruptcy schedules, must have suffered injury attributable to that failure, and must have been aware of that injury. However, the requirement that Petitioner suffered injury does not mean, as Petitioner now asserts, that he could not have brought this claim until his discharge was denied. Bankruptcy courts do not have discretion to deny discharge to a debtor unless certain rules of that court are violated, including the knowing and fraudulent failure to declare an asset. *See* 11 U.S.C. § 727(a)(4) (2012) (listing exceptions to mandatory discharge). By failing to list the transfer of the Monte Mac asset, Petitioner was exposed to the possibility that his bankruptcy discharge could be denied. This exposure was the loss of a legal right to have his debts discharged, in itself an actual injury. *See Sharts*, 1994-NMSC-114, ¶ 12 ("[W]hen malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury." (internal quotation marks and citation omitted)).

**{21}**     The record shows that Petitioner was aware of the sale of his interest in Monte Mac because that sale occurred only one month prior to his filing for bankruptcy. He was or should have been aware that this sale was not listed in his bankruptcy schedules because he reviewed those schedules and testified to their accuracy. He was also aware that those schedules were not accurate because he stated in his objection to Respondents' fee application, filed May 22, 2006, that he had instructed Respondents to withdraw his disclosure statement because it did not accurately depict his financial affairs. Finally, he was aware that the failure to disclose this transfer exposed him to a denial of discharge because he was questioned by creditors regarding the sale and because he alleged this denial of discharge as damages attributable to malpractice in a motion to the bankruptcy court filed before the actual denial of his discharge.

**{22}**     We agree with the courts below that Petitioner was aware of his claim and could and should have brought that claim in the bankruptcy proceeding. Petitioner alleged malpractice based on inaccuracies in his financial disclosures a year before the bankruptcy fee hearing. While the questioning regarding Monte Mac did take place after the fee hearing, it was only one day later and was before the entry of the final fee judgment. Even after the entry of that judgment, Petitioner had the opportunity to move for a new trial, to move to alter or amend the judgment, or to appeal. *See* Fed. R. Bankr. P. 9023 (1983) (applying Fed. R. Civ. P. 59 (1995) (allowing a motion for a new trial, Subsection (b), or the alteration or amendment of a judgment within 10 days of the entry of judgment, Subsection (e))); Fed. R. Bankr. P. 8002(a) (1997) (allowing a notice of appeal to be filed within 10 days after the entry of

judgment). Petitioner's motion alleging the potential for a denial of discharge as damages from malpractice was filed over a year before the actual denial of his discharge and less than a year after the fee judgment, at which point he could still have requested postjudgment relief. *See* Fed. R. Bankr. P. 9024 (1991) (applying Fed. R. Civ. P. 60(b) (1987) (allowing relief from final judgment due to newly discovered evidence within one year of the entry of judgment)). We therefore conclude that Petitioner had a full and fair opportunity to litigate his malpractice claim in the bankruptcy court and that res judicata applies to preclude it in this second proceeding.

## IV.     CONCLUSION

**{23}**     We affirm the grant of summary judgment to Respondents.

**{24}     IT IS SO ORDERED.**


_____
                                    **CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**LINDA M. VANZI, Judge**