Certiorari Denied, January 27, 2017, No. S-1-SC-36236

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2017-NMCA-025

Filing Date: November 29, 2016

Docket No. 34,465

CECILIA TAFOYA and
CHARLES TAFOYA,

      Plaintiffs-Appellants,

v.

PAMELA MORRISON and
LEON MORRISON,

      Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Raymond Z. Ortiz, District Judge

Law Office of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

for Appellants

Moses, Dunn, Farmer & Tuthill, P.C.
Joseph L. Werntz
Albuquerque, NM

for Appellees

## OPINION

**SUTIN, Judge.**

**{1}** Cecilia Tafoya and Charles Tafoya (the Tafoyas) appeal the district court's grant of summary judgment against their claims to an easement along a driveway established by Cecilia's father, Alex J. Armijo (the father), for access to the father's lot when the father split

1

his property into two lots, kept the rear lot, and transferred the lot abutting the public street to Cecilia. The district court's rulings favored Pamela and Leon Morrison (the Morrisons), who had succeeded to ownership of the rear lot.[1]

**{2}**     A less than pleasant history of family battles in connection with the easement and the properties in general, up to at least January 2004, is contained in *Redman-Tafoya v. Armijo*, 2006-NMCA-011, 138 N.M. 836, 126 P.3d 1200. The battle continued after *Armijo*. Before us now is the rest of the story.

**{3}**     The district court's grant of summary judgment against the Tafoyas' claims stems largely from its conclusion that most of the Tafoyas' easement claims had previously been and were finally litigated as part of an inheritance revocation case (the revocation proceeding), which will be discussed later, and thus those claims were barred. Additionally, the district court granted summary judgment in favor of the Morrisons on the Tafoyas' claim to a prescriptive easement as being without merit. Specifically on appeal, the Tafoyas argue that (1) res judicata does not bar them from claiming a driveway easement over the Morrisons' land, (2) collateral estoppel does not bar their claim for a driveway easement over the Morrisons' land, (3) they did not have a full and fair opportunity to litigate their claim to an easement in the revocation proceeding, and (4) there is no basis in the law of either res judicata or collateral estoppel to bar the Tafoyas' prescriptive easement and easement by necessity claims against the Morrisons.

**{4}**     We hold that the Tafoyas' claims for an express easement, implied easement, and easement by necessity were properly precluded under the doctrine of res judicata. We also hold that the district court properly granted summary judgment on the Tafoyas' prescriptive easement claim.

**BACKGROUND**

**{5}**     The father owned property south of a public road, Camino de Las Animas, in Santa Fe, New Mexico. On August 13, 1993, the father recorded a Family Transfer Lot Split plat (the plat) showing a split of his property into Lot 1, which he retained, and Lot 2, which he specifically designated as being for "Cecilia Armijo-Redman." Lot 2 is situated north of Lot 1 and south of Camino de Las Animas. The plat shows Lot 1 situated south of Lot 2, including a 15-foot driveway that ran west of Lot 2, connecting Lot 1 to Camino de Las Animas. In the plat, Lot 2 is shown subject to a 5-foot strip of land just east of the driveway running from Camino de Las Animas to Lot 1, making the driveway functionally 20 feet wide. In fact, the plat actually indicates the father's reservation of these two land strips as a "20' private ingress/egress and utility easement" running in part across Lot 2, all to serve his Lot 1. In connection with the plat, on August 18, 1993, the father recorded a family

---

[1]The Morrisons also succeeded to ownership of two tracts of land, A and B, that adjoin Lot 1. For ease and clarity, we refer to all of the Morrisons' land as "Lot 1."

transfer affidavit (the affidavit), affirming his desire to "convey or have conveyed" Lot 2 to Cecilia. In 1994, after the plat and affidavit were recorded, Cecilia built her house on Lot 2. *Id.* ¶ 4. It appears that the father was highly involved in the construction of Cecilia's house, and the contractor who built the house followed the father's instructions as to where the house was to be placed. *See id.*

**{6}**    In 1995 the father executed a will. The father's will provided that "the [p]ersonal [r]epresentative shall immediately take such action as may be necessary to sell my personal residence and the land . . . and proceeds received after payment of all expenses of sale be divided equally amongst my children." The will also provided that

> [i]t is my express desire that the equal distribution of my proceeds of my Estate shall be done without conflict amongst my children and to [e]nsure that this occurs I decree that the land upon which [Cecilia] has built her home is her sole and separate property and shall not be considered for purposes of determining her equal share of the proceeds of my estate.

*Id.* ¶ 5.

**{7}**    The father passed away in 1997, upon which Cecilia's brother, Anthony I. Armijo, was appointed personal representative of the father's estate (the estate) in a Santa Fe County District Court probate proceeding titled *In the Matter of the Estate of Alex J. Armijo*, D-101-PB-97-00152. *Redman-Tafoya*, 2006-NMCA-011, ¶¶ 4, 6. In this Opinion, we refer to Anthony, in his capacity as personal representative of and acting for the estate, as "Armijo." Armijo began attempts to sell Lot 1, and it was discovered that Cecilia's house and a stucco wall encroached into Lot 1's 5-foot easement some 8 inches. *Id.* ¶¶ 4, 8. The encroachments were not noted on the plat, and a variance was not obtained by either Cecilia or the father at the time the encroachments were constructed. As pointed out in *Redman-Tafoya*, the house and wall encroachments and a chain link fence that had been constructed at the division between the 5-foot strip and the 15-foot strip became bones of contention between Cecilia and Armijo. *Id.* ¶¶ 4, 8-16.

**{8}**    In November 1998, through Armijo, the estate as grantor formally deeded Lot 2 to Cecilia as grantee by a recorded personal representative's deed that reserved the 20-foot easement for ingress and egress for the benefit of Lot 1. The deed, however, expressly stated that the estate does "not approve of, or acquiesce in, the encroachments by [g]rantee and her improvements onto the above-described easement, and requests that the encroachments be removed."

**{9}**    In January and July 1999, prospective purchasers made offers to purchase Lot 1 but faced requirements by the City of Santa Fe (the City) of a 20-foot-wide driveway to Lot 1, the removal of part or all of the chain link fence for fire equipment access, and possible removal of a portion of the house and wall encroachments before issuance of any building permit for development of Lot 1. *Id.* ¶¶ 10-11. In August 1999, Armijo tendered another

3

personal representative's deed for Lot 2 to Cecilia. *Id.* ¶ 12. This deed stated that if Cecilia did not remove the chain link fence, her property would revert to the estate. *Id.* In November 1999, Cecilia "took the position . . . that for safety reasons she would not remove the chain link fence." *Id.*

**{10}** After failing to resolve the encroachment and access issues, in November 1999, Armijo filed a quiet title complaint (Armijo's quiet title action) against Cecilia in regard to the easement and, in part, attempting to force the removal of Cecilia's chain link fence and the encroaching part of Cecilia's residence. *Id.* ¶ 14. Cecilia responded with claims seeking, among other relief, to disinherit her brother, Anthony, and a sister.

**{11}** In June 2000, a purchase contract involving the residence on Lot 1 was terminated because of an impasse between the City and Cecilia based on the chain link fence and other encroachment issues. *Id.* ¶ 15. In September 2000, the City began to relent, admitting that the fire department had discretion to permit an easement of less than 20 feet and further indicating that this could be implemented provided, among other things, that "the access through Lot 2 [was] improved to make the width wider, suggesting removal of [40] feet of the chain link fence[.]" *Id.* ¶ 16 (internal quotation marks omitted). Cecilia again declined to alter the encroachments. *Id.* After months of informal discussions, in mid to late 2001, the City eventually modified its position further and indicated that it would allow a 15-foot driveway easement. *Id.* ¶¶ 17-18. Armijo proceeded to seek a variance from the City that would allow the driveway to be only 15 feet and that would allow Cecilia to retain her residence, stucco wall, and the chain link fence as they existed. *Id.* ¶ 18. Cecilia concurred in Armijo's application for a variance, and a new offer was made to purchase the residence on Lot 1, the offer was accepted, and due diligence began. *Id.* ¶¶ 18-19. The City approved the variance in December 2001, and when Cecilia refused to sign off on the variance even though it reflected the elimination of the 5-foot easement across her property, the City nevertheless proceeded to record the variance with Armijo's signature and without Cecilia's signature. *Id.* ¶ 20. According to Cecilia, she did not sign the variance plat because "[s]he wanted the [variance] to show the easement for ingress and egress she claimed was implied from [the plat] documents and the City's imposition of a requirement for a second off-street parking space at the rear of the Tafoya lot."

**{12}** Afterwards, in November 2002, while Armijo's quiet title action was in its final stages of trial, "Armijo executed a quitclaim deed . . . to [Cecilia] for all of Lot 2 without any reservations or restrictions with respect to the encroachments or the [e]asement[,]" which included the 5-foot easement through Lot 2. *Id.* ¶¶ 3, 22. Armijo's quiet title action resulted in a judgment filed in January 2003 determining that issues regarding the 5-foot easement across Cecilia's property were moot by the recording of the variance plat that abandoned that easement and by Armijo's quitclaim deed to Cecilia of Lot 2. *Id.* ¶ 22. Of note is that in the midst of Armijo's quiet title action, in December 2001, Armijo sold Lot 1 and the residence on Lot 1 to the Morrisons. *See id.* ¶ 20.

**{13}** To exacerbate instead of calm the conflict between Cecilia and Armijo, on November

4

21, 2002, days before he executed the quitclaim deed as to Lot 2 to Cecilia that contained no restrictions, Armijo filed a motion in the probate proceeding to revoke Cecilia's inheritance (the revocation proceeding), grounding the motion in actions and conduct of Cecilia alleged by Armijo to be in violation of the no-contest clause in the father's will. *Id.* ¶ 23. In response, Cecilia filed a motion for summary judgment on the motion to revoke inheritance. Her motion set out undisputed facts based on her own affidavit and the affidavits of Lidia Garza Morales, a former assistant City attorney, and David Pike, the contractor who built Cecilia's home. The Pike affidavit explained in detail the circumstances surrounding the construction of Cecilia's residence, and the Morales affidavit explained in detail the circumstances surrounding the variance proceedings. Cecilia's motion concentrated on showing, in opposition to the revocation motion, that her actions were taken with probable cause and that Armijo's allegations did not show that she contested or attacked the will.

**{14}** A substantial part of the revocation proceeding involved Cecilia's defense against allegations that her conduct violated the no-contest provision, part of which consisted of the history of Cecilia's claimed easement need and entitlement to reach the rear of her property for access to her house and for parking. She concluded her motion and memorandum stating that she had "demonstrated on undisputed facts that she acted with probable cause throughout the dispute initiated by her brother[.]" And she added that "she had the testator's permission for any encroachment; . . . [Armijo] made absolutely no pre-filing investigation; and . . . she prevailed."

**{15}** Among her arguments, Cecilia stated:

All of [Armijo's] allegations boil down to one thing: Cecilia's defense of her property rights in opposition to litigation initiated by [Armijo], seeking to quiet title to five feet of a driveway easement created when the testator gave her a lot on which she built her home, which structure was sited at the testator's request and direction within the driveway easement created by the lot split plat. The apparent reason: If the testator's explicit desire that his transfer of the lot to his daughter without further dispute could be overridden by intimidation, then the testator's remaining adjacent property could be intensively developed, and thus generate more money for the other heirs.

(Emphasis omitted.) She further stated that "[Armijo's] contentions boil down to a complaint that he was unable to market the property for a more dense development because his sister insisted that the driveway not be widened at the expense of taking down part of her house—an unlikely judicial result in any event[.]"

**{16}** In an affidavit in support of her motion, Cecilia set out the history of the lot split and the construction of her residence on Lot 2, including a plethora of facts about the variance process, as well as the attempts by Armijo and his real estate agent, Roman Maes, to get her to sign documents regarding the 20-foot easement and the encroachments or her lot would revert to the estate. As to the quiet title action, Cecilia believed that she was defending her

property rights and not attacking provisions of the will. In Cecilia's affidavit, she also discussed her ability to access the rear of her lot up until that point, her need for a second off-street parking space, and her desire for a driveway easement.

**{17}** At a hearing during the revocation proceeding, Armijo's counsel indicated that Armijo wanted the easement issues addressed by the court. He stated:

> Finally, Judge, there is a separate issue, and I would like to raise this issue with you because I think that it is the opening wedge for the next series of lawsuits and objections, and I would like to just deal with it right now. This lady is saying that she has an easement along this driveway to enter into her property right over here at the southwest corner of her property. And she now says that that's . . . one of her statements.
>
> Now, the problem is, the Morrisons own this property. The estate has already sold this property. There was—the Planning Commission agreed to the 15 feet. . . .
>
> She says that she has an easement. The truth is—and, frankly, Judge, what I'm asking you is this: Let's just bite this off and decide it today, because what's going to happen is she's going to sue the Morrisons. The Morrisons are going to bring us in. We're going to have to incur additional attorney[] fees from the estate, and they have an absolutely meritless claim for this easement, and I think it ought to get decided right now.

Following these comments, counsel for Armijo explained why Cecilia had no express or implied easement. He concluded with the hope that the district court would find the facts relating to Cecilia's conduct, including her conduct relating to the easement questions "to be true and that you will, once and for all, rein in this lady who has run amuck through this [e]state."

**{18}** In his opening remarks, Cecilia's counsel congratulated Armijo's counsel "on what is, quite possibly, the most egregiously[]overstated version of this case or any case that I've heard in recent memory" and proceeded to explain the facts related to the easement issue differently. In regard to an easement right under *Hughes v. Lippincott*, 1952-NMSC-060, 56 N.M. 473, 245 P.2d 390, Cecilia's counsel stated, "It is crystal clear, as a matter of law, that [Cecilia] has that easement." And counsel then stated, "I concur with [Armijo's counsel's] suggestion that we determine that issue here [and] now. I think we should."

**{19}** Later, however, during the trial, Cecilia's counsel stated:

> Your honor, both [Armijo's counsel] and myself, in our opening argument, stated our desire to have her access to that second off-street parking decided in this [c]ourt. I have to change my position on that, I don't believe this

6

[c]ourt can decide that issue without the Morrisons here. They're necessary parties now because it affects their property now. Anything the [c]ourt decided is not going to be binding on [them].

To which Armijo's counsel replied,

I'm going to object to that. He just elicited testimony from his witness on this very issue. And now that the testimony has come in that there clearly has been no grant of easement, he now wants to change his mind and have this tried in another forum. Our intent here is to get this issue decided, because we're afraid that this lady is going to go after the Morrisons on that issue.

To which Cecilia's counsel responded,

I don't mind being bound by my original agreement, Your Honor, but the fact of the matter is the Morrisons cannot be. If the Morrisons cannot be bound, it serves no purpose. They're necessary parties. The purpose of this testimony is to illustrate [Cecilia's] reasons for refusing to sign the plat. She's been accused of hampering the sale of the property in every way that [Armijo] can imagine and testify to. This is the explanation for that.

**{20}** The district court weighed in:

Well, I will attempt to resolve this issue. If I resolve it in a way that's going to affect the Morrisons[,] then that will be subject to their coming into court and challenging the [c]ourt's ruling. If I find they're entitled to it, they're going to then have a claim against the estate, also, because they're going to say the estate sold them that piece, but if I find that she's not entitled to it, then it doesn't affect the Morrisons at all. If I'm going to rule in your favor, I think you're correct, the Morrisons have a right to be heard on it, and it will result in the Morrisons probably having some kind of a claim against the estate. Maybe everybody gets disinherited because we use up all the money in litigation in that event.

The matter closed with Cecilia's counsel stating, "On that point, Your Honor, I'll be happy to address that in our respective closing trial briefs."

**{21}** In Cecilia's post-trial brief, her counsel argued that Cecilia had an access easement to her second off-street parking space. Among other arguments was this statement:

[T]he evidence established both an existing use at the time of the severance of ownership by the family lot split plat, and a necessity for the second off[-]street parking space. The conveyance also overlapped the lot line into a 20' driveway easement as shown on that plat. The driveway, in effect, was the

7

boundary, and the land was "bounded upon a way."

**{22}** In the revocation proceeding, the district court granted Armijo's motion to revoke Cecilia's inheritance. *Redman-Tafoya*, 2006-NMCA-011, ¶ 28. The district court filed a decision in January 2004 containing findings of fact and conclusions of law that reached into the historical feud regarding Cecilia's asserted easement rights. The court's decision detailed the historical facts relating to the property issues and prior legal proceedings and concluded that the plat and affidavit "did not convey any interest in any off[-]street parking space or an easement thereto in [Cecilia]" and that the 20-foot easement "was solely for ingress, egress[,] and utility to benefit . . . Lot 1 . . . and was not for the benefit of . . . Lot 2." The district court entered a final judgment in March 2004 granting Armijo's motion to revoke Cecilia' inheritance pursuant to the no-contest clause of the father's will and denying Cecilia's motion for summary judgment. The judgment stated that "[Cecilia] does not have any interest in any off[-]street parking space or an easement over [Lot 1.]"

**{23}** Cecilia appealed the district court's revocation judgment, basing her arguments on court error in revoking her inheritance. *Id.* ¶¶ 1, 45-69. This Court reversed that judgment. *Id.* ¶ 70. Employing a standard of strict, narrow construction to the "relatively general no-contest clause" in the will, it was determined in *Redman-Tafoya* that none of Cecilia's conduct or actions could constitute a contest or attach under the will. *Id.* ¶¶ 64, 69. Cecilia did not appeal the district court's findings of fact or conclusions of law regarding the second off-street parking space or the denial of her claim to a driveway easement.

**{24}** Within a month after *Redman-Tafoya* reversed the district court's revocation of Cecilia's inheritance, in January 2006, Armijo, individually and as personal representative of the estate, Cecilia, and one of their sisters entered into a comprehensive settlement agreement and mutual release of all claims that were previously brought or that could be brought against each other. At the same time, these parties filed a stipulation of dismissal with prejudice of all claims that were brought or could have been brought in the 1999 quiet title action filed by Armijo (Cause No. D-0101-CV-99-02774), the revocation proceeding (Cause No. D-0101-PB-97-00152), and the appeal decided in *Redman-Tafoya*, 2006-NMCA-011, relating to the father's will and estate. The Morrisons, who were the grantees of Lot 1 in 2001, were not parties to any of the legal proceedings between Cecilia and Armijo, to the settlement agreement and mutual release, or to the stipulation of dismissal.

**{25}** In May 2011, the Tafoyas filed the lawsuit now in this Court against the Morrisons to quiet title and for injunctive and declaratory relief against the Morrisons' efforts to block the Tafoyas' access over the 15-foot driveway to reach the rear of the Tafoyas' property. The Tafoyas claimed "either an express or implied easement of access along the driveway" as evidenced by the plat and/or a notarized document from the father granting Cecilia an

easement.[2] They also claimed an easement by reasonable necessity or, in the alternative, an easement by prescription. The Morrisons moved for summary judgment in February 2012 based on the doctrines of res judicata, collateral estoppel, and settlement and release. In response to the Morrisons' motion, the Tafoyas argued that neither res judicata nor collateral estoppel should apply and insisted that the settlement agreement was signed under duress. In seeking to refute the Morrisons' res judicata argument, the Tafoyas pointed out that during the revocation proceeding no "serious effort [was] made before or after the trial to brief the court on express, implied[,] or prescriptive easements and how the specific facts of the Tafoya[s'] usage applied to each theory."

**{26}**  In an order and judgment entered in July 2012, the district court granted the Morrisons' summary judgment motion and dismissed with prejudice the Tafoyas' claims of express and implied easements, as well as their claim to an off-street parking space at the rear of Lot 2. The district court dismissed the Tafoyas' prescriptive easement claim without prejudice. The judgment recited that the claims of express and implied easements with respect to the off-street parking space, and all further attempts to again assert such claims, were "forever barred under the doctrine of res judicata." The court explained that these claims "were tried, adjudicated to a final decision on the merits, and denied" in the earlier revocation proceeding. With respect to the Tafoyas' claim of prescriptive easement, the court explained that "no [10-]year period has yet lapsed since the date on which final judgment in the [revocation proceeding] was entered."

**{27}**  Soon after, in August 2012, the Tafoyas moved for reconsideration, asking the district court to reconsider its grant of summary judgment in the Morrisons' favor with respect to the implied and prescriptive easement claims. The court denied the motion for reconsideration in a February 2013 order that stated (1) "[the Tafoyas'] claims of implied easement and entitlement to a second off[-]street parking space at the rear of their lot were raised, tried[,] and denied in [the revocation proceeding,]" and (2) that "[b]ecause the predicate finding for an easement by necessity is that [the Tafoyas] are entitled to a second off[-]street parking space at the rear of their lot, [the Tafoyas'] claim for an easement by necessity in this action is also barred because the claim to a second off[-]street parking space was tried and denied in the [revocation proceeding]." In addition, the court amended its July 2012 summary judgment, stating that "[the Tafoyas' m]otion for [r]econsideration is denied, except that the [s]ummary [j]udgment entered July 26, 2012[,] is hereby amended to include this [c]ourt's ruling on the [m]otion for [r]econsideration that [the Tafoyas'] claim of an easement by necessity is also dismissed with prejudice."

---

[2] This notarized document was not offered into evidence during the revocation proceeding, despite its existence at that time. The Tafoyas argue that the notarized document was not offered into evidence because the grant was not recorded and Cecilia did not have the original, and thus she was instructed by counsel to testify that she had no writing regarding her use of the roadway.

9

**{28}** In December 2014, again basing its rulings on the revocation proceeding determinations relating to the Tafoyas' claimed easement rights, the district court granted summary judgment favoring the Morrisons on a motion for summary judgment on a counterclaim the Morrisons had filed in the action seeking a quiet title decree. During the hearing on the Morrisons' motion for summary judgment on their counterclaim, the district court considered, for the first time, the merits of the Tafoyas' prescriptive easement claim. The court held that no clear and convincing evidence was established to support the claim and that there had not been and could not be adverse use against a claim of right for 10 years. The court determined that adverse use began to run after the district court issued its decision in the revocation proceeding in March 2004 and was cut off when the Morrisons installed a fence preventing access in September 2013. In this summary judgment on the Morrisons' quiet title counterclaim, the court stated:

> 2.    The Tafoyas have no easement of any kind or nature, including, but not limited to, an easement by express grant, an easement by necessity, an implied easement or a prescriptive easement, over or across the real property owned by the Morrisons in the City and County of Santa Fe, New Mexico known as Lot 1[.] . . .

> 3.    The Tafoyas have no right, title[,] or interest of any kind in or to the Morrison Property, and the Tafoyas, and each of them, and their successors and assigns, are forever barred and forever estopped from having or claiming any right, title[,] or interest in or to or any claim to or upon the Morrison Property, or any part thereof, adverse to the Morrisons, including, but not limited to, any claims to an easement of any kind over or across the Morrison Property.

> 4.    The Tafoyas do not have an off-street parking space at the rear of the real property owned by the Tafoyas known as Lot 2[.] . . .

> 5.    The Tafoyas shall not, directly or indirectly, enter upon, or cross, or attempt to enter upon or cross, the Morrison Property, and the Tafoyas shall not deposit, place, locate or affix any substance, material, object[,] or thing of any kind upon the Morrison Property.

> 6.    The Tafoyas shall not assert, claim, argue[,] or allege in any legal or administrative proceeding of any kind, including but not limited to, any lawsuit, administrative proceeding[,] or administrative appeal, that they have or claim an easement over the Morrison Property or that they claim or are entitled to enter upon or cross the Morrison Property in order to get to an alleged second off-street parking space at the rear of the Tafoya Property. . . .

The court's summary judgment was preceded by a considerable amount of argument in

10

opposition to and in support of summary judgment.

**{29}** The Tafoyas appeal the district court's July 2012 order and judgment, the February 2013 order, and the December 2014 order and judgment.

## DISCUSSION

**{30}** The Tafoyas' points on appeal are that neither res judicata nor collateral estoppel[3] bars their express and implied easement claims and that no basis exists to bar their prescriptive easement and easement by necessity claims. The Tafoyas ask this Court to reverse the district court's summary judgments barring those claims, to vacate the district court's grant of summary judgment quieting title in favor of the Morrisons, and to remand for trial on the merits of the claims. Because we affirm the dismissal of the Tafoyas' express and implied easement claims, as well as the easement by reasonable necessity claim, based on the doctrine of res judicata, we need not address the propriety or merits of the Tafoyas' collateral estoppel or easement by necessity arguments. Additionally, because we affirm on res judicata grounds, we need not fully address the Morrisons' assertions that the Tafoyas are barred from claiming an easement based on the doctrine of law of the case or on the settlement agreement and mutual release.

## I.     Standards of Review

**{31}** "Summary judgment is appropriate in the absence of any genuine issues of material fact and where the movant is entitled to judgment as a matter of law." *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 9, 335 P.3d 1243; *see* Rule 1-056(C) NMRA. We review orders granting summary judgment de novo. *See Potter v. Pierce*, 2015-NMSC-002, ¶ 8, 342 P.3d 54. Similarly, the standard of review for res judicata, also known as claim preclusion, is de novo. *Kirby v. Guardian Life Ins. Co. of Am.*, 2010-NMSC-014, ¶¶ 59, 61, 148 N.M. 106, 231 P.3d 87.

## II.     Res Judicata

---

[3] The Tafoyas and the Morrisons address collateral estoppel in their appellate briefs, although the district court based its July 2012 order and judgment solely on res judicata. None of the orders and judgments from which the Tafoyas appeal expressly indicates that the dismissals or grants of summary judgment were based on the doctrine of collateral estoppel. Although the district court's December 2014 grant of summary judgment quieting title in the Morrisons stated that the Tafoyas were "forever estopped[,]" nowhere in any of the court's dispositive orders and judgments did the court enter findings of undisputed facts, conclusions, or any other type of determination showing that the elements of collateral estoppel were established. Because we affirm on res judicata grounds and because collateral estoppel was not relied upon by the court, we do not evaluate the collateral estoppel arguments.

**{32}** "Res judicata [or claim preclusion] is a judicially created doctrine designed to promote efficiency and finality by giving a litigant only one full and fair opportunity to litigate a claim and by precluding any later claim that could have, and should have, been brought as part of the earlier proceeding." *Potter*, 2015-NMSC-002, ¶ 1. "A party's full and fair opportunity to litigate is the essence of res judicata." *Id.* ¶ 15 (alteration, internal quotation marks, and citation omitted). " 'The party asserting [res judicata] must satisfy the following four requirements: (1) the parties must be the same [or in privity], (2) the cause of action must be the same, (3) there must have been a final decision in the first suit, and (4) the first decision must have been on the merits.' " *Tunis v. Country Club Estates Homeowners Ass'n*, 2014-NMCA-025, ¶ 20, 318 P.3d 713 (quoting *Kirby*, 2010-NMSC-014, ¶ 61); *see Deflon v. Sawyers*, 2006-NMSC-025, ¶ 3, 139 N.M. 637, 137 P.3d 577 (stating as the first element of res judicata that "the parties must be the same or in privity" (internal quotation marks and citation omitted)). "The purpose of our application of res judicata is to protect individuals from multiple lawsuits, to promote judicial economy, and to minimize the possibility of inconsistent judgments." *Moffat v. Branch*, 2002-NMCA-067, ¶ 14, 132 N.M. 412, 49 P.3d 673. "[N]either the type of proceeding nor the damages sought are determinative" when evaluating the fundamental question of the fairness of preclusion under the totality of circumstances in each case. *Potter*, 2015-NMSC-002, ¶ 16.

**{33}** The Tafoyas contend that res judicata does not bar their right of access over the Morrisons' land in the present action. Their first argument under the contention is that the Morrisons were not in privity with the estate at the time the revocation proceeding was commenced. Their second argument is that the causes of action in the present case are not the same as the causes of action in the revocation proceeding. We address each argument in turn.

## A.    Privity

**{34}** In arguing that the Morrisons failed to prove privity of the parties, the Tafoyas acknowledge that the general principle is that parties are in privity when they have a successive relationship to the same rights of property. However, the Tafoyas also argue that this principle applies only when the claim alleged to be subject to res judicata is commenced while the predecessor in interest, here the estate, owns the property. The Tafoyas argue that the identity of interests under that general principle is not applicable when, as here, the property is transferred to a new owner, i.e., the Morrisons, before the proceeding is commenced by the grantor, i.e., the estate. Thus, the Tafoyas conclude that once the transfer of interest in the land to the Morrisons occurred and the estate no longer held an interest in the land, the estate could not be considered to be in privity with the new owner and would not be a proper party to litigate the issues affecting the land.

**{35}** The Morrisons acknowledge that the Tafoyas "correctly note[] that privity of estate ends once title to the land is transferred[,]" but contend that "privity of contract remains between the grantor and grantee based on the present covenants contained in the warranty deed" transferring Lot 1 to the Morrisons. The Morrisons continue, arguing that "[t]he

12

Morrisons and the [e]state had the same interest in seeing that those claims were defeated—the Morrisons because they bargained for a conveyance free of encumbrances and the [e]state because it warranted that Lot 1 was free of encumbrances."

**{36}** The Tafoyas spurn the Morrisons' privity argument made in the district court that was based on a theory that the estate was in privity because it had transferred the easement by warranty deed. According to the Tafoyas, the warranty deed created nothing more than an indemnity obligation of the estate, and an indemnitor cannot substitute itself for the later property owner. For this proposition, the Tafoyas rely on *Lopez v. Townsend*, 1933-NMSC-045, ¶¶ 31-32, 46, 37 N.M. 574, 25 P.2d 809 (Watson, C.J., on rehearing), as distinguishing between an insurance company's liability to pay a judgment, and its "liability to be sued." In the same regard, the Tafoyas argue that an indemnitor, the estate, is entitled to defend a lawsuit only "as the designated representative of the landowner[, the Morrisons], and it can attain that status only with notice to the landowner of the lawsuit and the landowner's express consent"—that is, "[w]ithout the consent of the [the Morrisons], [the estate] has no authority to assume the conduct of the defense."

**{37}** In support of their privity argument, the Tafoyas call upon a footnote in *Bloom v. Hendricks*, 1991-NMSC-005, ¶ 9 n.2, 111 N.M. 250, 804 P.2d 1069, as indicating that a predecessor in title is not in privity with the current landowner in the defense of a prescriptive easement claim. *Bloom* involved an indemnitee's right to sue and pursue a claim against an indemnitor for attorney fees and costs in defending claims relating to a boundary dispute which, tangentially, also involved a prescriptive easement. *Id.* ¶¶ 9-10, 20, 23-24. In the footnote relied upon by the Tafoyas, the Court in *Bloom* stated:

> *See Silva v. State*, 106 N.M. 472, 745 P.2d 380 (1987) (*res judicata*, or "claim preclusion," depends upon identity of parties or privies, *id.* at 474, 745 P.2d at 382, and offensive collateral estoppel, or "issue preclusion," requires that the defendant against whom estoppel is asserted has previously litigated an issue unsuccessfully, *id.* at 476, 745 P.2d at 384). The [defendants], as *predecessors* in title, were not in privity with the [plaintiffs] in the latter's defense of the prescriptive easement claim in *Lane v. Bloom*. 1 A.C. Freeman, *A Treatise on the Law of Judgments* § 442 (1925).

*Bloom*, 1991-NMSC-005, ¶ 9 n.2.

**{38}** In further discussion of lack of consent by the Morrisons, the Tafoyas state that the record contains no evidence establishing that the estate's resolution of the easement claims was on the Morrisons' behalf and that the estate's counsel even indicated that "the [e]state was pursuing the claims solely on its own behalf in order to avoid a subsequent indemnity claim." Further, the Tafoyas argue that the interests of the estate as indemnitor and those of the Morrisons were in conflict, in that "[i]t was in the [e]state's interest that any easement be prescriptive and therefore outside the warranty covenants." In addition, the Tafoyas argue that the estate and the Morrisons "have sued or been sued in two different legal capacities:

13

that of owner of the property and that of indemnitor of the owner on some of the easement issues and not on others." This, according to the Tafoyas, indicates that the "capacities and the interests . . . each represent conflict in significant ways[,]" making res judicata inappropriate.

**{39}** The Morrisons respond that (1) the intent of the privity requirement is satisfied because Cecilia was a party to the revocation proceeding, and (2) privity was established under a theory that pursuant to the warranty deed from the estate to the Morrisons, the estate had a duty to defend easement claims against the land conveyed because "[a] grantor and its immediate grantee have privity in contract[.]" They argue that privity of contract remains between the grantor and grantee based on the present covenants contained in the warranty deed.

**{40}** In the Morrisons' view, "it was the identity of interests between the [e]state and [the] Morrison[s] that caused the [e]state to proceed with the adjudication of [Cecilia's] easement claims in the [revocation proceeding]." They argue that there was no conflict in the position between the Morrisons and the estate. Further, the Morrisons assert that *Bloom* is not applicable authority since *Bloom* involved a prescriptive easement, and no prescriptive easement claim was litigated in the revocation proceeding. In addition, according to the Morrisons, the grantee in *Bloom* successfully defended the easement claim and then sought reimbursement from remote grantors, the defendants, for litigation costs, and the defendants were not parties to the lawsuit in which the easement claim was defeated.

**{41}** Still on *Bloom*, the Morrisons reason that unlike the defendants in *Bloom*, Cecilia was a party in the revocation proceeding in which her easement claims were adjudicated, and therefore, the Tafoyas are unable to escape the effect of the outcome, simply because Lot 1 had been transferred to the Morrisons at the time the decision was rendered. The Morrisons further assert that *Bloom* is distinct from this case because summary judgment was granted against the prescriptive easement claim pursuant to the Morrisons' second motion for summary judgment to quiet title because the Tafoyas failed to raise an issue of material fact as to whether the claim could satisfy all elements of a prescriptive easement.

**{42}** In regard to the express and implied easement claims, the Morrisons argue that the basis for the claims arose before the transfer to the Morrisons, and if the estate failed in its defense of the claims, it stood in breach of the warranty covenant against the encumbrances. With no citation to the record, the Morrisons represent that they "deferred to the [e]state and [its] capable trial counsel to defend the easement claims." They also assert that "[p]rivity in res judicata exists if a non[-]party agrees to be bound by the determination of issues in an action between others or is adequately represented by someone with the same interests who was a party in the earlier suit[,]" citing *N.M. Consolidated Construction LLC v. City Council of the City of Santa Fe*, 97 F. Supp. 3d 1287 (D.N.M. 2015). The Morrisons emphasize that the United States Supreme Court recognizes six exceptions to the general rule against non-party preclusion, including "when the non-party agrees to be bound by the determination of issues in an action between others" or "was adequately represented by someone with the

14

same interests[.]" *Id.* at 1307 (internal quotation marks and citations omitted).

**{43}** Finally, on privity, the Morrisons argue that the Tafoyas' argument based on *Bloom* that a predecessor in title is not in privity with a successor in title, as well as the Tafoyas' argument based on *Lopez* relating to a grantor under a warranty deed being an indemnitor, were not raised in the district court or docketing statement and therefore were not preserved.

**{44}** The Tafoyas' argument that the estate and the Morrisons lacked privity for the sake of res judicata is not compelling. As indicated by the Morrisons, "[d]etermining whether parties are in privity for purposes of res judicata requires a case-by-case analysis." *Deflon*, 2006-NMSC-025, ¶ 4. Our Supreme Court has looked favorably on the Tenth Circuit's definition of privity in *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1174 (10th Cir. 1979), which held that "[p]rivity requires, at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same." *Deflon*, 2006-NMSC-025, ¶ 4 (internal quotation marks and citation omitted). Although admittedly parties are more clearly in privity when a landowner obtains a judgment regarding a piece of property and then the property is sold to a subsequent purchaser, i.e., when the parties have a "successive relationship to the same rights of property[,]" *id.* (internal quotation marks and citation omitted), the definition of "privity" does not necessarily need to be so rigid.

**{45}** Here, the Morrisons and the estate are substantially the same in interest. As indicated in the Morrisons' answer brief, the Morrisons and the estate had the same interest in seeing that Cecilia's easement claims were defeated—the Morrisons, because they bargained for a conveyance free of encumbrances as evidenced by the warranty deed, and the estate, because it warranted that Lot 1 was free of encumbrances. As indicated by the estate during the revocation proceeding, there was real concern about Cecilia suing the Morrisons and the Morrisons looking to the estate for recovery or for a defense. Thus, it was in both the estate's and the Morrisons' interest to seek a ruling from the district court in the revocation proceeding that Cecilia had no express or implied easement claims.

**{46}** Although the record does not show an express agreement between the Morrisons and the estate regarding the estate's request to the district court to resolve Cecilia's easement claims during the revocation proceeding, the case law cited by the Tafoyas stops short of supporting their proposition that, in New Mexico, a grantor/indemnitor "can attain [the] status [as designated representative of the landowner] only with notice to the landowner of the lawsuit and the landowner's express consent." *See Bloom*, 1991-NMSC-005, ¶¶ 14, 18 (holding that, in the context of recovering costs from a grantor under a warranty covenant for defending a title from an adverse claim, "[s]ome jurisdictions require more than mere notice of the suit and require that the grantee make a specific request upon the grantor to appear and defend" and citing *Morgan v. Haley*, 58 S.E. 564 (Va. 1907), for the proposition that "without the assent of the grantee, the grantor has no authority to assume the conduct of the defense"). The aforementioned authorities relied upon by the Tafoyas neither support the Tafoyas' broad proposition that notice and express consent are required for privity under

15

the doctrine of res judicata nor do they apply in this case where the parties are substantially the same in interest. Where a party does not cite authority that supports an argument, we may assume no such authority exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. We will not consider propositions that are unsupported by citation to authority. *ITT Educ. Servs., Inc. v. N.M. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969.

**{47}** In short, because the test for determining privity is not as strict as the Tafoyas suggest and because we are convinced that the interests of the estate and the Morrisons in resolving the express and implied easement claims were substantially the same, we conclude that the parties were in privity for res judicata purposes.

**B.      Same Cause of Action**

**{48}** The Tafoyas' second point against the application of res judicata is that res judicata does not bar their claims against the Morrisons because the cause of action in the present case is different from that in the revocation proceeding. The Tafoyas argue that the requirements of the single-transaction rule that was adopted in the Restatement (Second) of Judgments §§ 24-25 (Am. Law Inst. 1982), were not met. According to the Tafoyas, "[o]ur courts look to whether the facts are closely entwined and whether the claims would reasonably be brought in a single action." In this regard, the Tafoyas argue that the district court in the revocation proceeding recognized that it could not resolve the easement claims without the Morrisons in court as a party and that the sole cause of action before the court was whether Cecilia's inheritance should be revoked. Thus, the Tafoyas contend that "[Cecilia's] claim that an express . . . or an implied easement from the City justified her refusal to sign the [c]onsolidated [p]lat was a minor sub-issue at trial[,]" and further, "[t]he bulk of the evidence concerned the [5]-foot encroachment of the Tafoyas' house and fence onto the Morrison's driveway easement over the Tafoya[s'] land." In the Tafoyas' view, "[t]he easement by necessity claim was not relevant in any way and no prescriptive easement claim was even raised[,]" and "[i]t cannot be said that the motion to revoke an inheritance and the claims to an easement over land owned by someone not a party to the action is part of a single cause of action."

**{49}** In response, the Morrisons assert that the causes of action were the same for the purposes of res judicata because the easement claims raised during the revocation proceeding and the easement claims raised in the present case arose "out of a common nucleus of operative facts[.]" *See Potter*, 2015-NMSC-002, ¶ 11 (stating that "[t]he transactional approach considers all issues arising out of a common nucleus of operative facts as a single cause of action" (internal quotation marks and citation omitted)); *Anaya v. City of Albuquerque*, 1996-NMCA-092, ¶ 8, 122 N.M. 326, 924 P.2d 735 (stating that "[t]he transactional test requires us to go beyond any similarity in desired outcome and to examine the operative facts underlying the claims made in the two lawsuits"). The Morrisons support this approach based on the following circumstances set out in their answer brief that evidence the overlap between the claims in the revocation proceeding and those in the

16

present case.

> [During the revocation proceeding, Cecilia] provided discovery on her easement claim. She filed a summary judgment motion that addressed the easement issue. She consented through counsel to have the court decide the issue. She submitted requested findings of fact, conclusions of law[,] and closing argument on the easement issue. She elicited testimony from witnesses at trial on the issue.

**{50}** We hold that, under the transactional approach, the easement claims in the revocation proceeding and the easement claims presented in this case constitute "a single cause of action for res judicata purposes." *Potter*, 2015-NMSC-002, ¶ 11. As indicated in *Potter*, "[t]he facts comprising the common nucleus should be identified pragmatically, considering (1) how they are related in time, space, or origin[;] (2) whether, taken together, they form a convenient trial unit[;] and (3) whether their treatment as a single unit conforms to the parties' expectations or business understanding or usage." *Id.* (internal quotation marks and citation omitted).

**{51}** The Tafoyas' easement claims in the present case and Cecilia's previous easement claims, which she agreed to litigate in the revocation proceeding, are "rooted in a common nucleus of operative facts." *Id.* ¶ 14. First, the facts asserted in the revocation proceeding are related to the facts regarding the easement claims in the present case. In the revocation proceeding, Cecilia consistently asserted her claim to a second off-street parking space and to an easement over the Morrisons' driveway. Although her easement claims in the revocation proceeding were vague, and we do not have the entire record from the revocation proceeding, Cecilia did assert an easement right during the course of discovery, in her post-trial brief, and in her proposed findings of fact and conclusions of law. During the revocation proceeding, she also asserted a "need" to use the driveway and argued that her father provided her with an easement as evidenced by the plat. Cecilia's arguments and the evidence she used to support her claim to an easement in the revocation proceeding were revived and expanded in the present case. In this case, the Tafoyas again asserted an easement based on the plat and affidavit, which were available and presented in the revocation proceeding. Although the Tafoyas provide additional evidence to support their easement claim, i.e., a notarized document from the father expressly granting an easement, that evidence was in Cecilia's possession during the revocation proceeding, and she decided not to present it.

**{52}** As in the revocation proceeding, the Tafoyas again assert the notion of necessity and reference Cecilia's claim to a second off-street parking space. Although we do not agree that an easement by necessity claim was well developed in the revocation proceeding because Cecilia simply asserted her need for the easement, as opposed to arguing the elements required to prove an easement by necessity, the Tafoyas' claim that they need the easement to access the rear of their property in times of infirmity, for deliveries, for guests, etc. is related to Cecilia's prior assertion that she needed the easement to access the rear of her

17

property with her car. Moreover, given that the parties agreed to litigate the easement issues in the revocation proceeding and given that there have been no apparent changes regarding the claimed necessity since, Cecilia could have and should have clearly asserted her implied easement by reasonable necessity claim in the revocation proceeding. According to *Brooks Trucking Co. v. Bull Rogers, Inc.*, 2006-NMCA-025, ¶ 20, 139 N.M. 99, 128 P.3d 1076, "[i]n [New Mexico] cases that apply res judicata, when later-raised claims could have been asserted in an earlier lawsuit, the operative facts underlying the newly asserted claims existed at the time the claims in the first action were brought." *See Moffat v. Branch*, 2005-NMCA-103, ¶¶ 12-13, 138 N.M. 224, 118 P.3d 732; *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 82, 134 N.M. 77, 73 P.3d 215.

**{53}** That Cecilia changed her implied easement claim from implied by law or implied by necessity, due to the City's requirement for a second off-street parking spot, to implied by necessity due to the Tafoyas' need to access their home without having to climb stairs does not alter our analysis because the facts upon which the Tafoyas rely have not changed. *See Anaya*, 1996-NMCA-092, ¶ 8 (requiring consideration of "the operative facts underlying the claims"). The Tafoyas offer no explanation as to why they were able to assert certain easement claims in the revocation proceeding but were unable to assert the implied easement by necessity claim they now make. In short, because the facts underlying Cecilia's easement claims in the revocation proceeding and the Tafoyas' easement claims here were related, the first prong under *Potter* is met. *See* 2015-NMSC-002, ¶ 11.

**{54}** We also hold that the second and third *Potter* prongs are met because the validity of the easement claims were evaluated as part of the estate's claim that Cecilia's inheritance should be revoked, and thus it was convenient for the court to consider the merits of the easement claims during the revocation proceeding. *See id.* And it would have been convenient for the court in the revocation proceeding to consider the modified claims that were made by the Tafoyas in the present action. Further, Cecilia initially agreed on the record that the court should consider the easement claims during the revocation proceeding, thus making it nearly impossible for the Tafoyas to argue that the fact the court issued a decision on the easement claims during the revocation proceeding did not conform to the parties' expectations. *See id.*

**{55}** The Tafoyas' argument that Cecilia's claim for an express or implied easement in the revocation proceeding was a "minor sub-issue" and thus their current claims are different from the prior claims is unavailing because, as previously stated, the parties agreed to address the easement claims in the revocation proceeding head on. The parties litigated Cecilia's easement claims during the revocation proceeding. We hold that, under the transactional test, the causes of action were the same, and it was proper for the district court to apply res judicata. *See id.*

### III. Full and Fair Opportunity

**{56}** Although related to res judicata , the Tafoyas separately argue that they did not have

a full and fair opportunity to litigate their claim to an easement in the revocation proceeding. Whether the parties had a full and fair opportunity to litigate their issues is an overarching concern in evaluating res judicata. *See Armijo v. City of Española*, 2016-NMCA-086, ¶ 13, __ P.3d __ ("The essence of claim preclusion is the parties' full and fair opportunity to litigate the issues."). Although the Tafoyas argue that their alleged lack of a full and fair opportunity to litigate their claim implicates both res judicata and collateral estoppel, because we affirm on the grounds of res judicata, we focus on the Tafoyas' arguments specific to res judicata.

**{57}** In support of their argument, the Tafoyas point to the district court's musing as to its authority to grant Cecilia an easement in the revocation proceeding when the Morrisons were not parties to that action and further highlight the court's position that it could only decide the easement issues if it ruled against Cecilia. The Tafoyas argue that they did not have a full and fair opportunity to litigate their easement claims because the estate raised those claims at the commencement of the evidentiary hearing without prior notice that it intended to litigate those issues. They also argue that "the interest in providing an opportunity for a considered determination . . . outweighs the interest in avoiding the burden of relitigation[,]" quoting the Restatement (Second) of Judgments § 27 cmt. h (Am. Law Inst. 1982).

**{58}** We disagree with the Tafoyas that they did not have a full and fair opportunity to litigate their easement claims. During the revocation proceeding, the parties engaged in discovery as to the easement claim, and Cecilia presented evidence and argument regarding her claim to an easement. Cecilia's counsel agreed that evaluating and ruling on those claims would be beneficial. Her counsel's attempt to back pedal occurred only after evidence had been offered. That Cecilia was ultimately unsuccessful in her easement claims does not mean that the Tafoyas did not have a full and fair opportunity to present their claims. *See, e.g.*, *Armijo*, 2016-NMCA-086, ¶¶ 9, 13-15 (highlighting the requirement that the parties have a full and fair opportunity to litigate the issues and holding that the plaintiff did have an opportunity to assert his contract claims in the first action and was thus precluded from subsequently asserting those claims). Because Cecilia was afforded an opportunity for a considered determination in the revocation proceeding, the application of res judicata is appropriate here.

## IV.    Prescriptive Easement

**{59}** The Tafoyas contend that, even if this Court were to conclude that res judicata applies to some claims, there exists no basis for precluding the Tafoyas from litigating their prescriptive easement and easement by necessity claims against the Morrisons. Because we have already addressed the Tafoyas' easement by necessity claim, we focus on their prescriptive easement claim. As to the prescriptive easement claim, the Tafoyas argue that res judicata does not apply because warranty covenants do not run as to an open and obvious prescriptive easement, and thus, any claim of privity between the estate and the Morrisons by way of the warranty deed does not apply to a prescriptive easement.

19

**{60}** "[A]n easement by prescription is created by adverse use of land, that is open or notorious, and continued without effective interruption for the prescriptive period []of ten years[]." *Algermissen v. Sutin*, 2003-NMSC-001, ¶ 10, 133 N.M. 50, 61 P.3d 176. "An adverse use is a use made without the consent of the landowner[,]" *id.* ¶ 11, and when "a use has its inception in permission, express or implied, it is stamped with such permissive character and will continue as such until a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts." *Id.* ¶ 12 (emphasis, internal quotation marks, and citation omitted).

**{61}** According to the Tafoyas, the district court erroneously granted summary judgment on their prescriptive easement claim on the basis that the prescriptive period started against the Morrisons when the judgment in the revocation proceeding was entered. As previously indicated, the court determined that the prescriptive period began to run after the district court issued its decision in the revocation proceeding in March 2004 and ended when the Morrisons installed a fence preventing access in September 2013. The Tafoyas state that the basis for the district court's ruling as to when the 10-year statute of limitations was restarted was that the Morrisons were in privity with the estate in the revocation proceeding and therefore the revocation proceeding served as a quiet title action against the Morrisons. The Tafoyas assert, of course, that the Morrisons were not in privity with the estate, they were not a party to the settlement that followed, and the Morrisons' title could not be quieted in the revocation proceeding. Thus, according to the Tafoyas, the date of the judgment in the revocation proceeding was irrelevant to the running of the prescriptive period. And, further, the prescriptive easement claim was properly brought in the present case and the proper date for the start of the prescriptive period must await trial, on remand, as to when the use became adverse.

**{62}** The Morrisons agree that the revocation proceeding has no preclusive effect on the Tafoyas' prescriptive easement claim, which was not asserted or evaluated in the revocation proceeding. However, the Morrisons argue that the Tafoyas' claim fails because (1) it is barred by the terms of the settlement agreement, or (2) the Tafoyas rightfully lost on that claim before the district court. We begin by addressing the Morrisons' argument that even if preclusion did not apply, the prescriptive easement claim is barred by the settlement agreement.

**{63}** The Morrisons contend that the Tafoyas' claim for a prescriptive driveway easement is barred because Cecilia settled and released her easement claims in the parties' settlement agreement and mutual release that followed the *Redman-Tafoya* remand. The Morrisons point particularly to a paragraph in the release providing that the settlement agreement and release was binding upon successors and assigns of the parties, and they assert that they were successors to the estate by virtue of the estate's warranty deed to Lot 1. The Morrisons therefore argue that they are entitled to the benefit of the release because it "not only encompassed the express and implied easement claims, but also 'all . . . future claims . . . which may later develop . . . .[,]' " including the Tafoyas' prescriptive easement claim. The Morrisons provide no authority in support of this contention and argument that they are

successors or assigns under the contract. They fail to explain how their succession in ownership through the estate's warranty deed and the language of the settlement agreement and release between Cecilia and the estate entitled them, a non-party to the settlement agreement, to invoke the settlement agreement and release to bar the Tafoyas' claims in the present case.

**{64}** The Tafoyas answer the Morrisons' points with two arguments: (1) that the Morrisons were not parties or successors to the settlement agreement and mutual release, and (2) that the Tafoyas' claims to a prescriptive easement were neither actually litigated nor could have been litigated in the revocation proceeding. They assert that had the estate intended the Morrisons to benefit from the settlement agreement and mutual release, the estate would have brought them in as a party to the agreement or at least mentioned them by name. The Tafoyas, like the Morrisons, provide no authority in this particular section of their reply brief that responds to the Morrisons' arguments.

**{65}** Because the Morrisons fail to develop their arguments regarding the applicability of the settlement agreement and mutual release with relevant case law, authority, or citations to the record, we reject the Morrisons' argument that the Tafoyas are barred from asserting their prescriptive easement claim based on the settlement agreement and mutual release. Although the Morrisons may have been able to persuasively argue that they were "successors" or "assigns" as contemplated by the settlement agreement and mutual release, the Morrisons offer no legal support or citation to the record that would support their assertion. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)); *ITT Educ. Servs., Inc.*, 1998-NMCA-078, ¶ 10 (stating that this Court will not consider propositions that are unsupported by citation to authority.). Additionally, as indicated by the Tafoyas, the parties were aware that the Morrisons could get involved, and yet the estate chose not to specifically name them in the settlement agreement and mutual release.

**{66}** We next address the Morrisons' argument that the Tafoyas' prescriptive easement claim was without merit. When initially considering the Tafoyas' prescriptive easement claim in 2012, the district court held that the claim was not ripe for review and dismissed the claim without prejudice. However, in December 2014, when considering the Morrisons' summary judgment motion on their quiet title counterclaim, the district court held that the Tafoyas had no prescriptive easement and that the Tafoyas had no right, title, or interest of any kind in or to the Morrisons' property or adverse to the Morrisons, including "any claims to an easement of any kind over or across the Morrison[s' p]roperty." Although the factual basis for the district court's judgment against the Tafoyas' prescriptive easement claim is not stated in the court's order, the court stated during the hearing that no clear and convincing evidence was established to support a prescriptive easement claim and that there had not been and could not be adverse use against a claim of right for 10 years, which began to run after the district court issued its decision in the revocation proceeding in March 2004 and

which was cut off when the Morrisons installed a fence preventing access in September 2013.

**{67}**    In this case, we agree with the district court that the Tafoyas failed to establish a prescriptive easement claim because they did not show adverse use of the driveway for the required 10-year period. Throughout the course of the revocation proceeding, Cecilia asserted that she had permission to use the driveway. And in fact even in the present proceeding, the Tafoyas continued to assert permissive use, and Charles Tafoya asserted that they had permission to use the driveway and that permission was not contested until 2005, which was well after the ruling in the revocation proceeding. Although the Tafoyas now claim that there are genuine issues of material fact regarding the date wherein use of the easement became adverse, they do not adequately support that assertion. Conversely, the Morrisons cite specifically to statements by the Tafoyas that their use was permissive at least until the district court, in the revocation proceeding, entered judgment against Cecilia in 2004. *See Dow v. Chilili Coop. Ass'n*, 1986-NMSC-084, ¶ 13, 105 N.M. 52, 728 P.2d 462 (holding that a party opposing summary judgment "may not simply argue that [evidentiary] facts [requiring a trial on the merits] might exist, nor may [the party] rest upon the allegations of the complaint"); *see also Cates v. Regents of N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, ¶ 9, 124 N.M. 633, 954 P.2d 65 ("If there is no evidence that creates a reasonable doubt as to the existence of a genuine issue, summary judgment is appropriate."). Because the district court issued its decision in the revocation proceeding wherein Cecilia argued permissive use up to and as late as 2004, adverse use, if any, and at the earliest, began in 2004. As noted earlier, the Morrisons erected a fence in September 2013, such that, even if there had been uninterrupted adverse use, the 10-year period required by law for a prescriptive easement had not passed as of the date that the Morrisons installed their fence. Because the Tafoyas failed to offer any genuine issues of material fact as to continued adverse use of land without effective interruption for the prescriptive period, we hold that the district court was correct in granting summary judgment against the Tafoyas on their prescriptive easement claim.

**CONCLUSION**

**{68}**    We affirm the district court's grant of summary judgment against the Tafoyas as to the express, implied, and by-necessity easement claims on the basis of res judicata. We also affirm the district court's grant of summary judgment as to the Tafoyas' prescriptive easement claim.

**{69}    IT IS SO ORDERED.**

 

 
                                              _____

                                                **JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**


_____
**STEPHEN G. FRENCH, Judge**